**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| ZACHARY KNOTTS and LINDSAY KNOTTS, | |
| *Plaintiffs,* | |
| *v.* | Case No. |
| CITY OF CUYAHOGA FALLS, DYLAN PARATORE, in his individual and official capacities, and BRADFORD DOBNEY in his individual and official capacities, | **COMPLAINT** **JURY DEMAND** |
| *Defendants.* | |

**VERIFIED COMPLAINT**

Zachary Knotts and Lindsay Knotts, by and through undersigned counsel, bring this action for declaratory, compensatory, nominal, and injunctive relief in order to vindicate their constitutional and civil rights under the First, Fifth, and Fourteenth Amendments to the U.S. Constitution and Ohio state law. A Cuyahoga Falls ordinance prohibits amplified speech based on the nature of the speaker; such a program of discrimination constitutes a blatant violation of the First Amendment. Moreover, the same ordinance is so vague as to chill and repress the Knotts' speech and religion. Finally, Zachary Knotts was subject to retaliatory arrest under that ordinance, resulting in a months-long prosecution based on Defendants' practice of viewpoint discrimination.

**STATEMENT OF THE CASE**

1.     Cuyahoga Falls Ordinance § 509.03(a)(6) (hereinafter the "Ordinance") regulates noise based on the identity of the speaker; it contains unconstitutional speaker-based exemptions that favor certain organizations while discriminating against individual citizens like Mr. Knotts who wish to exercise their First Amendment rights. Such a system is unconstitutional on its face.

2.      The Ordinance is also unconstitutionally vague, as it prohibits "unreasonable noise" likely to cause "inconvenience or annoyance to persons of ordinary sensibilities" without defining these subjective terms, thus inviting arbitrary and discriminatory enforcement.

3.      Plaintiff Zachary Knotts was arrested, cited, and then prosecuted for engaging in constitutionally protected speech because Defendants disagreed with the message of his speech.

4.      Additionally, both Plaintiffs are currently afraid to use constitutionally protected amplification in their protesting activity due to the chilling nature of Cuyahoga Falls Ordinance § 509.03(a)(6) and continued threats from Defendant Cuyahoga Falls police officers.

5.      Since December 14, 2024, the Knotts have felt a conviction to spend their Saturday mornings to save the lives of the unborn through their sidewalk advocacy at the Northeast Ohio Women's Center ("NEOWC"), an abortion clinic at 2127 State Road in Cuyahoga Falls.

6.      On the morning of December 28, 2024, Zachary Knotts and his wife, Lindsay Knotts, traveled to the NEOWC to engage in constitutionally protected speech, protesting the performance of abortions.

7.      Plaintiff Zachary Knotts brought a battery-powered megaphone to share his message.

8.      Also at the location were abortion escorts,[1] with umbrellas, which were used to shield the visitors' faces, and instruments (kazoos and whistles) which were used to drown out the Knotts' speech.

9.      Police officers arrested Zachary Knotts for engaging in disorderly conduct and issued a citation for the same conduct, alleging a violation of the Ordinance.

---

[1] As used herein, "escorts" refer to volunteers who assist people visiting NEOWC to get from their cars to the abortion clinic's doors.

10.    During this arrest, police seized the megaphone in the possession of Mr. Knotts.

11.    This arrest was made despite neither of the on-duty officers ever witnessing either Mr. or Mrs. Knotts use the megaphone. The arrest was based solely on a video taken by Ptl. Oldham.

12.    Despite the fact that other volunteers who opposed Plaintiffs' message would play instruments like kazoos and whistles to try to "cover the megaphone" to silence their pro-life message, only Mr. Knotts was given a citation and prosecuted for disorderly conduct.

13.    Additionally, on numerous prior occasions, those opposed to Plaintiffs' message have played amplified music, made threats to the Knotts, and used other noise-creation tactics in plain view of police and with no consequence.

14.    As demonstrated by the selective enforcement against Mr. Knotts, Defendants have established a pattern of viewpoint discrimination, targeting pro-life speech for suppression while allowing comparable or louder speech from those with opposing viewpoints.

15.    Mr. Knotts brings this action to vindicate not only his own constitutional rights but also to protect the rights of all citizens to engage in protected speech in public forums without fear of discriminatory enforcement of vague laws.

16.    The actions of Defendants have caused the Knotts to suffer violations of their constitutional rights, emotional distress, and the burden of defending against an unconstitutional prosecution.

17.    The Knotts seek declaratory and injunctive relief to prevent further violations of their constitutional rights, as well as damages for the harm he has already suffered as a result of Defendants' unconstitutional actions.

## JURISDICTION AND VENUE

18.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, as protected by the Civil Rights Act, 42 U.S.C. § 1983.

19.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343.

20.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

21.     This action is also brought under the Ohio Constitution and Ohio Revised Statutes. Because these ancillary state law claims involve the same parties and arise from the same incident as their federal claims, this Court has supplemental jurisdiction under 28 U.S.C. § 1367.

22.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this district and division and/or all the acts described in this Complaint occurred within this district.

## THE PARTIES

23.     Plaintiff Zachary Knotts is a pro-life advocate who volunteers his time as a sidewalk counselor.

24.     Plaintiff Lindsay Knotts is a pro-life advocate who also volunteers her time as a sidewalk counselor.

25.     Defendant City of Cuyahoga Falls is a municipal corporation duly incorporated under the laws of the State of Ohio. The Cuyahoga Falls Police Department ("CFPD") is a subdivision of the City.

26.     Defendant Dylan Paratore is a member of the CFPD. He participated in the arrest and citation of Mr. Knotts. He is named in his individual and official capacities.

27.     Defendant Bradford Dobney is a member of the CFPD. He participated in the arrest and citation of Mr. Knotts. He is named in his individual and official capacities.

## FACTUAL BACKGROUND

### A. The Cuyahoga Falls Ordinance

28.     Defendant City of Cuyahoga Falls has adopted an Ordinance regulating disorderly conduct: Cuyahoga Falls Ordinance § 509.03.

29.     At issue here is the subsection of the Ordinance regulating unlawful noise. Ordinance § 509.03(a)(6) prohibits "recklessly" being the cause of "inconvenience, annoyance, or alarm," by "[g]enerating or, being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument."

30.     The Ordinance subsection contains two exceptions also relevant to this action:

    a.  Warning and alarm devices which have the purpose of signaling unsafe or dangerous situations or calling for police used for such purposes.

    b.  Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of

the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization or live outdoor musical or theatrical performances or concerts conducted at any outdoor entertainment facility where such use is legal under the Zoning Code.

**B. Plaintiffs' Free Speech Activities**

31.     In November of 2024, the Knotts decided to begin engaged in street evangelism; to that end they researched sound ordinances of cities in the Northern Ohio/Western Pennsylvania region.

32.     On December 6, 2024, Zachary Knotts called the Cuyahoga Falls Police Department and asked if the use of amplified sound was allowed under the Ordinance. During this conversation, Zachary Knotts did not make his political stance known.

33.     A lieutenant there assured Mr. Knotts that modest amplified sounds would not be "an issue."

34.     Based on the wording of the Ordinance and the assurances from the Cuyahoga Falls Police Department, the Knotts chose the City as an appropriate place to engage in street evangelism.

35.     On December 7, 2024, the Knotts visited outside the Northeast Ohio Women's Center, ("NEOWC"), an abortion clinic located at 2127 State Road in Cuyahoga Falls, in order to see what it was like and determine if there was a Christian presence there.

36.      During this visit, Mr. Knotts told abortion clinic escorts that his mother-in-law had considered getting an abortion while she was pregnant with Mrs. Knotts.

37.     Mr. Knotts further explained that according to pro-abortion logic, Mrs. Knotts "should be dead."

38.     An unidentified escort quickly interrupted and stated, "we can fix that."

39.     A police officer was present and witnessed this interaction.

40.     Another escort spat on Mr. Knotts, also in the police officer's presence.

41.     No repercussions occurred for any of this conduct against the Knotts.

42.     On December 14, 2024, the Knotts began regularly engaging in the exercise of their pro-life activity outside NEOWC.

43.     On the morning of December 28, 2024, Zachary Knotts and his wife, Lindsay Knotts, traveled to NEOWC, to protest the performance of abortions, exercising their constitutionally protected right to speak.

44.     The Knotts also brought a battery-powered megaphone to help more people hear their pro-life message.

45.      Also present at NEOWC were several abortion escorts, volunteers who guide women into abortion facilities.

46.     These escorts used several devices, such as kazoos and whistles, to drown out Plaintiffs' speech, including Mr. Knotts' speech amplified through his megaphone.

47.     The escorts also repeatedly harassed Mr. and Mrs. Knotts by shoving their umbrellas in the Knotts' faces.

48.     Mr. and Mrs. Knotts filmed these altercations.

49.     Mr. and Mrs. Knotts remained on the public sidewalk for the entire duration of their protest.

50.     Neither of the Knotts approached any of the visitors on NEOWC property.

51.     During their time outside the abortion clinic, Mr. Knotts attempted to engage in conversation with some of the abortion clinic escorts to express his opposition to abortion and his support for the protection of preborn human life.

52.     Another escort told Mr. Knotts to "suck start a shotgun."

53.     At all times, Mr. and Mrs. Knotts stood on the public sidewalk, across the NEOWC's driveway from each other.

54.     The Knotts recorded their activity.

55.     Although Mr. Knotts used a megaphone to be heard, his megaphone was not substantially louder than the noise of surrounding traffic.

56.     The audio from Mrs. Knotts' video recording demonstrates that Mr. Knotts' megaphone was easily drowned out by the sound of the traffic on the nearby State Road and the escorts' whistles and kazoos used to drown out his megaphone.

57.     At some point, Mr. Knotts' megaphone ran out of batteries, and the Knotts remained without amplification.

58.     During this time, a nearby resident heard Mr. Knotts speaking over the megaphone.

59.     She called the police with a noise complaint requesting that they force Mr. Knotts to stop engaging in his constitutionally protected speech.

60.     The resident did not call to complain about the escorts' whistles and kazoos, only Mr. Knotts' pro-life message.

61.     After the megaphone's batteries died and was no longer in use, Sgt. Dobney and Ofc. Paratore of the CFPD arrived in response to this complaint. (Tr. of Hr'g on Mot. to Dismiss ("Sgt. Dobney Examination") attached as Exhibit A at 27:2-25.)

62.     Sgt. Dobney was well aware of NEOWC's performance of abortions, that the protestors held pro-life views, that the escorts and the protestors were at odds, and that the interactions would occasionally become heated. (Ex. A at 24:1-18; 32:25-33:12; 37:2-15.)

63.     The officers only took a statement from Ptl. Oldham, a CFPD officer who was working off-hours as a private security guard for NEOWC at the time. (Ex. A at 38:15-39:2.)

64.     The CFPD questioned no other witnesses. (Ex. A at 45:2-46:11)

65.     Sgt. Dobney at no point personally witnessed Mr. Knotts' use of the megaphone, and only claimed to have consulted "recordings" of Mr. Knotts' use of amplification. No such recording was shown to Mr. Knotts. (Ex. A at 27:2-25; 40:5-8.)

66.     Despite these facts, and that CFPD and Ptl. Oldham had knowledge of the numerous threats and noise from the NEOWC escorts, the only person at NEOWC cited, arrested, or even detained by CFPD was Mr. Knotts.

67.     When Mrs. Knotts tried to inform CFPD officers about the threats while her husband was being detained, she was told that those threats were "not a crime."

68.     Defendant Dobney told Lindsay Knotts that if Zachary Knotts caused annoyance again, with or without amplified sound, he would again be arrested.

69.     Zachary Knotts was charged with violation of the Cuyahoga Falls Noise Ordinance.

70.     The case was transferred from Cuyahoga Falls Mayor's Court to Stow Municipal Court as 2025 CRB 00069.

71.     Mr. Knotts pled not guilty in Stow Municipal Court on January 9, 2025.

72.     On the day of trial, May 9, 2025, Mr. Knotts appeared, with counsel, prepared for trial. However, the government dismissed the case rather than proceed with trial. *See* Ex. B.

## COUNT I

## Violation of Right to Freedom of Speech Under the First Amendment: Cuyahoga Falls City Ordinance § 509.03(a)(6) is Facially Unconstitutional

### (42 U.S.C. § 1983)

73.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

74.     Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

75.     Religious and political speech are protected under the Free Speech Clause of the First Amendment to the United States Constitution and are at the very core of the rights it protects.

76.     Plaintiffs were engaging in religious and political speech and intended—and still intend—to continue to engage in such public speech in Cuyahoga Falls.

77.     Plaintiffs' speech was on a public sidewalk, which is universally recognized to be a traditional public forum.

78.     Restricting speech on a public sidewalk restricts speech in a traditional public forum and accordingly must be justified by the government without reference to the content of its speech.

79.     In other words, laws regulating speech on public sidewalks must be viewpoint and content neutral.

80.     The Ordinance criminalizes the use of loudspeakers and sound amplifying devices that generate "unreasonable noise or loud sound which is likely to cause inconvenience or annoyance or alarm to persons of ordinary sensibilities."

81.     The Ordinance contains exemptions in Section 509.03(a)(6)(B)(2) for "Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization."

82.     The exemptions transform the Ordinance from a content-neutral regulation into an unconstitutional content-based restriction on speech by discriminating based on speaker identity.

83.     The Ordinance's speaker preferences for educational, charitable, governmental, and religious organizations reflect an impermissible content preference in violation of the First Amendment.

84.     Under the Ordinance, certain favored speakers may use sound amplification devices while others, including Plaintiffs, are prohibited from using identical devices to share messages in the same location.

85.     Content-based regulations of speech are presumptively unconstitutional and subject to strict scrutiny, requiring the government to prove the restriction furthers a compelling interest and is narrowly tailored to achieve that interest.

86.     The Ordinance fails strict scrutiny because:

   a.  The stated government interest in preventing "inconvenience," "annoyance," or "alarm" does not constitute a compelling governmental interest of the "highest order";

   b.  The Ordinance is not narrowly tailored to serve any compelling governmental interest; and

c. The Ordinance's speaker-based exemptions are not necessary to serve any compelling governmental interest.

87. Due to this discrimination based on content, the Ordinance is facially unconstitutional.

88. Even if the Ordinance is deemed content neutral, it is not narrowly tailored to serve a significant governmental interest.

89. As applied to Plaintiff, the Ordinance has caused and continues to cause irreparable harm by chilling Plaintiffs' constitutionally protected speech and subjecting Plaintiffs to criminal penalties for engaging in protected expression.

90. Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## COUNT II

**Cuyahoga Falls City Ordinance § 509.03(a)(6) is Void for Vagueness Under the First**

**Amendment and Due Process Clause**

**(42 U.S.C. § 1983)**

91. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

92. Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

93.     Religious and political speech are protected under the Free Speech Clause of the First Amendment to the U. S. Constitution and are at the very core of the rights it protects.

94.     A vague regulation of speech also implicates the Due Process clause and the rights of parties to know what is required of them.

95.     Precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way.

96.     When speech is involved, rigorous adherence to this requirement is necessary to ensure that ambiguity does not chill protected speech.

97.     The Ordinance is, as evidenced by Defendants' application thereof, so vague as to invite arbitrary enforcement and is impossible for an average citizen to understand what rights or duties are required or restricted.

98.     The Ordinance is ambiguous in a variety of key provisions. For example:

   a.   509.03(a)(6) says, "…being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device." A person of "ordinary sensibilities" is extremely vague and left undefined.

   b.   The Ordinance also does not define inconvenience.

99.     This vagueness leaves discretion to police officers to enforce this Ordinance; as happened here, where a pro-life advocate was arrested, but not pro-abortion escorts making comparable noise.

13

100.    The vagueness of the Ordinance substantially chills the speech of citizens.

101.    The Ordinance's vagueness fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct is prohibited.

102.    The Ordinance's vagueness encourages arbitrary and discriminatory enforcement.

103.    The Ordinance is thus, on its face, unconstitutional.

104.    The practical effect of the Ordinance is to silence disfavored speakers while allowing favored speakers to amplify their speech, thereby creating an impermissible hierarchy of expression based on speaker identity.

105.    As applied to Plaintiff, the Ordinance has caused and continues to cause irreparable harm by chilling Plaintiffs' constitutionally protected speech and subjecting Plaintiffs to criminal penalties for engaging in protected expression.

106.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

**COUNT III**

**As-Applied Violation of Right to Freedom of Speech Under the First Amendment by Viewpoint Discrimination**

**(42 U.S.C. § 1983)**

107.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

108.    Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free speech as guaranteed by the U.S. Constitution.

109.    Religious and political speech are protected under the Free Speech Clause of the First Amendment to the U.S. Constitution and are at the very core of the rights it protects.

110.    Plaintiffs were engaging in religious and political speech and intend to continue to engage in such speech on the sidewalks of Ohio.

111.    Defendants retaliated against Plaintiffs for engaging in constitutionally protected activity and for the content and viewpoint of their expression.

112.    Defendants' retaliation is part of a pattern or practice of unconstitutional conduct that is certain to continue absent any relief.

113.    Plaintiffs' speech was on a public sidewalk, a traditional public forum.

114.    The use of amplification has been recognized by the Supreme Court to be protected by the First Amendment.

115.    It is unwritten policy for the Cuyahoga Falls police department to only charge pro-life protestors with a violation of § 509.03(a)(6), but to tolerate pro-abortion escorts who are engaging in substantially identical conduct.

116.    This targeted application of the Ordinance qualifies as viewpoint discrimination, which violates the First Amendment of the U.S. Constitution.

117.    Viewpoint discrimination strikes at the very heart of the First Amendment.

118.    Viewpoint discrimination is an egregious form of content discrimination.

119.    The government cannot constitutionally regulate speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.

120.    Discrimination against speech because of its viewpoint is presumed to be unconstitutional.

121.    Defendants have discriminated on the basis of viewpoint, targeting religious viewpoints for suppression that is unjustified by the written text of the Ordinance.

122.    This unwritten policy impermissibly infringes on the First Amendment's protection of Plaintiffs' rights of speech and assembly without serving any compelling state interest(s).

123.    This unwritten policy allows Cuyahoga Falls police officers to arrest those lawfully exercising their First Amendment rights, such as the plaintiffs, by criminalizing otherwise legal, protected First Amendment conduct.

124.    This unwritten policy fails to provide adequate safeguards to ensure that Cuyahoga Falls police officers do not abuse their discretion.

125.    Plaintiffs continue to suffer irreparable harm because their speech has been chilled out of concern they will be arrested again if they were to use amplification to speak in public anywhere in Cuyahoga Falls, even though they are rightfully entitled to do so under the Constitution.

126.    The acts of Defendants would chill a reasonable person from continuing to engage in the constitutionally protected activity of Plaintiffs.

127.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## COUNT IV

**Violation of Right to Free Exercise of Religion Under the First Amendment**

**(42 U.S.C. § 1983)**

128.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

129.    Pursuant to 42 U.S.C. § 1983, Plaintiffs bring this claim against Defendants for acting under color of state law to deprive them of their First Amendment right to free exercise of religion as guaranteed by the U.S. Constitution.

130.    The First Amendment prohibits the government from impermissibly burdening the free exercise of religion.

131.    The Ordinance, and the police officers' enforcement of that Ordinance, substantially burdens Plaintiffs' sincerely held religious beliefs and expression.

132.    Defendants have no compelling government interest for burdening Plaintiffs' religious beliefs and expression.

133.    Defendants' Ordinance, and Defendants' actions in enforcing that Ordinance, constitutes a violation of the First Amendment right of Freedom of Religion.

134.    The Ordinance, as applied against Plaintiffs, constitutes a violation of the First Amendment right to free exercise.

135.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against Defendants' violation of the First Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## COUNT V

### Violation of Right to Equal Protection Under the Fourteenth Amendment

### (42 U.S.C. § 1983)

136. Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

137. The Equal Protection Clause commands that no state shall deny to any person within its jurisdiction the equal protection of the laws. Put simply, the state must treat all similarly situated persons alike.

138. The Equal Protection Clause prohibits government officials from enforcing laws in a discriminatory manner based on a person's exercise of constitutionally protected rights, including the right to free speech under the First Amendment.

139. Defendants have engaged in discrimination based on religious viewpoint, enforcing their unwritten interpretation of Cuyahoga Falls law uniquely against religious speakers.

140. Mr. Knotts has been arrested and is likely to be subject to future enforcement on the basis of his viewpoint.

141. Compared to those who do not express a religious viewpoint, such as the pro-abortion escorts, Plaintiffs have been and will continue to be selectively mistreated.

142. The selective treatment and arrest of Plaintiffs is motivated by an intention to discriminate on the basis of impermissible considerations and to punish or inhibit the exercise of Plaintiffs' First Amendment rights.

143. The discriminatory enforcement of Cuyahoga Falls Codified Ordinance § 509.03(a)(6) against Plaintiffs had the effect of silencing their constitutionally protected speech while allowing speech from those expressing contrary viewpoints to continue unimpeded.

144.     Plaintiffs' prosecution under these circumstances violates the Equal Protection Clause of the Fourteenth Amendment, as law enforcement officials have deliberately targeted them for enforcement based on the content of their speech and their exercise of First Amendment rights.

145.     As a direct result of Defendants' discriminatory enforcement, Plaintiffs have suffered and continue to suffer irreparable harm, including the chilling of their constitutionally protected speech, emotional distress, and the burden of defending against an unconstitutional prosecution.

146.     This unequal treatment violates the Equal Protection Clause.

147.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in the amount to be determined by the evidence and this Court, an injunction against Defendants' violation of the Fourteenth Amendment, and the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### COUNT VI

**Violation of Article I, Section 7 of the Ohio State Constitution**

**(28 U.S.C. § 1367)**

148.     Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

149.     Article I § 7 of the Ohio State Constitution guarantees Freedom of Religion.

150.     The Supreme Court of Ohio has held that the Ohio Constitution's protection of free exercise is broader in scope than the First Amendment's and that free exercise claims are subject to strict scrutiny.

151.     The Ordinance cannot satisfy the standard of strict scrutiny.

19

152.    There was and is no compelling governmental interest in preventing Plaintiffs' use of reasonable noise amplification.

## COUNT VII

### Violation of Article 1, Section 11 of the Ohio State Constitution

### (28 U.S.C. § 1367)

153.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

154.    Article I, § 11 of the Ohio Constitution guarantees the same protections as the First Amendment's Free Speech Clause.

155.    For the reasons discussed above, the Ordinance and its enforcement violate the Plaintiffs' Free Speech rights.

## COUNT VIII

### Replevin

### (Ohio Revised Code § 2737.01 *et seq.*; 28 U.S.C. § 1367)

156.    Plaintiffs repeat, reallege, and incorporate by reference herein all preceding paragraphs as though fully set forth herein.

157.    Defendant, the City of Cuyahoga Falls has unlawfully seized Mr. Knott's megaphone.

158.    Said property was seized during the unlawful arrest of Mr. Knotts.

159.    Mr. Knotts retains a legal title to the megaphone.

160.    As a direct and proximate consequence of the seizure of Mr. Knott's property, including its continued possession by Defendant City of Cuyahoga Falls, the Knotts have incurred damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Zachary Knotts and Lindsay Knotts respectfully request that this Court enter judgment against Defendants and provide Plaintiffs the following relief:

A.      A declaratory judgment that Cuyahoga Falls Ordinance § 509.03(a)(6) is unconstitutional in violation of the First and Fourteenth Amendments, or, in the alternative, a declaratory judgment that Defendants' policy of prohibiting pro-life speech outside of an abortion clinic while other speech is allowed constitutes unconstitutional viewpoint discrimination;

B.      Injunctive relief prohibiting Defendants, including any of Cuyahoga Falls's other employees, agents, or representatives, from citing or arresting Plaintiffs for their pro-life sidewalk counseling;

C.      Compensatory, or in the alternative, nominal damages for violation of Plaintiffs' First and Fourteenth Amendment rights and for violation of Plaintiffs' rights under the Ohio Constitution Article 1 § 11 and § 7, including damages arising from his harassment, intimidation, and threatened citation by Defendants;

D.      A writ of replevin and compensatory, or in the alternative, nominal damages for the megaphone seized from Zachary Knotts on December 28, 2024;

E.      Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

F.      All other further relief to which Plaintiffs may be entitled.

Plaintiffs demand a jury trial.

Dated: May 30, 2025

Respectfully submitted,

**AMERICAN CENTER FOR LAW & JUSTICE**


  /s/ Abigail Southerland
Abigail Southerland*
NDOH Bar No. TN026608
625 Bakers Bridge Ave., Ste. 105-121
Franklin, TN 37067
Tel.: (615) 599-5572
Fax: (615) 599-5180
Email: asoutherland@aclj.org

Liam R. Harrell**
Nathan J. Moelker**
201 Maryland Ave., NE
Washington, DC 20002
Tel.: (202) 855-1778
Fax: (202) 546-9309
Email: lharrell@aclj.org;
        nmoelker@aclj.org


*admitted to this Court's General Bar
**pro hac vice applications forthcoming

**Counsel for Plaintiffs**

## Verification

I, Zachary Knotts, declare as follows:

1. I am the Plaintiff in the present case, over eighteen years of age, and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief; and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions arc true and correct pursuant to 28 U.S.C. § 1746.

Executed on 5/30/2025 _____.

Signed by:

844E45D8F20549E...

Zachary Knotts

## Verification

I, Lindsay Knotts, declare as follows:

1. I am the Plaintiff in the present case, over eighteen years of age, and a citizen of the United States of America.

2. I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Verified Complaint for Declaratory and Injunctive Relief; and if called on to testify I would competently testify as to the matters stated herein.

3. I verify under penalty of perjury under the laws of the United States of America that the factual statements in this Complaint concerning myself, my activities, and my intentions arc true and correct pursuant to 28 U.S.C. § 1746.

Executed on 5/30/2025 _____.

Signed by:

*Mrs. Lindsay Knotts*

Lindsay Knotts