**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ZACHARY KNOTTS and LINDSAY KNOTTS,** ) | |
| ) | |
| ) | **Case No. 5:25-CV-01120-JRA** |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **JUDGE JOHN R. ADAMS** |
| ) | |
| **CITY OF CUYAHOGA FALLS, DYLAN PARATORE, in his individual and official capacities, and BRADFORD DOBNEY in his individual and official capacities,** ) ) ) ) ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR A
PRELIMINARY INJUNCTION AND INCORPORATED MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT THEREOF**</u>

Defendants City of Cuyahoga Falls, Dylan Paratore, and Bradford Dobney respectfully submit this Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction and Incorporated Memorandum of Points and Authorities in Support Thereof.

## INTRODUCTION

Plaintiffs seek to invalidate City of Cuyahoga Falls Ordinance § 509.03(a)(6) (the "Ordinance"), a facially content-neutral law, on the grounds that it impermissibly infringes on Plaintiffs' First Amendment rights. Plaintiffs request a preliminary injunction on the grounds that they are irreparably harmed by the Ordinance, while simultaneously acknowledging they continue to exercise their First Amendment rights with no interference or restrictions, other than those self-imposed. Plaintiffs' arguments put their personal interests before those of other members of the community, as well as the City of Cuyahoga Falls' significant government interest in enforcing the Ordinance. Plaintiffs challenge to the Ordinance fails because it is content-neutral, protects a

significant government interest, is narrowly tailored, leaves open adequate alternative channels of communication, and is neither overly broad nor vague.  Plaintiffs' Motion for Preliminary Injunction should be denied.

## BACKGROUND

The City of Cuyahoga Falls is a city located in Summit County, Ohio, and was founded in 1812.  Cuyahoga Falls operates its local government under the powers granted to municipalities by the Constitution and laws of Ohio and enacted the Charter of the City of Cuyahoga Falls (the "Charter").  Under Articles I and IV of the Charter, the City Council possesses the authority to enact ordinances applicable to the City of Cuyahoga Falls.  Included in the ordinances duly adopted by the City Council are those under Chapter 509 of the General Offenses Code, titled Disorderly Conduct and Peace Disturbance, which reads:

> 509.03 DISORDERLY CONDUCT.
>
> (a) No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:
> .   .   .
> (6)  Generating or, being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument.
> .   .   .
> B.   The following are exempted from the prohibitions of this section:
> 1.   Warning and alarm devices which have the purpose of signaling unsafe or dangerous situations or calling for police used for such purposes.
> 2.   Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any

2

> educational, charitable, governmental or religious organization or live outdoor musical or theatrical performances or concerts conducted at any outdoor entertainment facility where such use is legal under the Zoning Code.

Codified Ordinances of the City of Cuyahoga Falls, Ohio § 509.03(a)(6).

Plaintiffs Zachary and Linday Knotts allege they are pro-life advocates who engage in street evangelism.  (ECF No. 1 at ¶¶ 23-24, 31).  As part of these activities, on December 28, 2024 the Plaintiffs were protesting outside of a clinic located within the City of Cuyahoga Falls.  (ECF No. 1 at ¶ 43).  The Plaintiffs utilized a megaphone to amplify their speech.  (ECF No. 1 at ¶ 44).  Plaintiffs allege a local resident phoned the police, complaining of excessive noise from the Plaintiffs' megaphone.  (ECF No. 1 at ¶¶ 58-59).  Defendants Paratore and Dobney arrived and cited Mr. Knotts for violation of the Ordinance.  (ECF No. 1 at ¶¶ 61, 69).  Ultimately, the charge for violation of the Ordinance was dropped prior to trial.  (ECF No. 1 at ¶ 72).  Plaintiffs admit they continue to engage in protest activities since December 28, 2024 in the same location but claim they no longer use a megaphone out of fear of prosecution.  (ECF No. 3 at ¶ 3).

## LEGAL STANDARD

Preliminary injunctions are "extraordinary and drastic remed[ies] . . . never awarded as of right."  *Platt v. Bd. of Comm'rs*, 769 F.3d 447, 453 (6th Cir. 2014) (quoting *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008)).  For this reason, the movant bears the burden to justify relief—even in First Amendment cases.  *Id.* (citing *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012)).  The movant must establish: (1) likelihood of success on the merits; (2) that the movant would suffer irreparable harm without the injunction; (3) that the balance of equities favor a preliminary injunction; and (4) that an injunction is in the public interest.  *Id.*  All four factors weigh against granting Plaintiffs' Motion for Preliminary Injunction.

3

## ARGUMENT

**I.**     **Plaintiffs Are Not Likely To Succeed On The Merits.**

The First Amendment to the United States Constitution prohibits the government from making any law abridging the freedom of speech.  U.S. CONST. amend. I.  The First Amendment, however, "does not guarantee the right to communicate one's views at all times and places or in any manner."  *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818 (6th Cir. 2005).  The Supreme Court has held that "people who wish to propagandize protests or views" do not have a constitutional right to do so "whenever and however and wherever they please."  *Gaughan v. City of Cleveland*, 212 F. App'x 405, 416 (6th Cir. 2007) (citing *United States v. Grace*, 461 U.S. 171, 177-78 (1983)).  Plaintiffs are unlikely to succeed on the merits because the Ordinance is content-neutral, protects a significant government interest, is narrowly tailored, leaves open adequate alternative channels of communication, and is neither overly broad nor vague.

### A.  The Ordinance is a constitutional, content-neutral restriction.

Although traditional public forum property, such as a sidewalk, occupies a special position in terms of First Amendment protection, and the government may not prohibit all communicative activity on such property, Supreme Court precedent:

> makes clear . . . that even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions "are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information."

*Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989) (quoting *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

Plaintiffs allege that the Ordinance is a content-based restriction on speech in a public forum.  (ECF No. 3 at ¶ 4).  It is not.  "The principal inquiry in determining content neutrality, in

4

speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.* "A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Id.*; *Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 (1984) (government regulation of expressive activity is content neutral so long as it is "justified without reference to the content of the regulated speech").

Here, the Ordinance does not purport to regulate the content of protected speech. Rather, it regulates the use of certain equipment, specifically, "radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or . . . any horn, drum, piano or other musical or percussion instrument." The regulation of such audio equipment evidences a content-neutral regulation under existing case law. *See City of Akron v. Pouliot*, 2011-Ohio-2504, *P14 (Ohio Ct. App. 2011). The Supreme Court has explicitly recognized noise abatement as a permissible basis for regulation. *See Ward*, 491 U.S. 781; *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1159 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 448 (2022) ("There is no First Amendment right to amplified sound *per se* . . ."). Noise abatement has nothing to do with the content or viewpoint of any speech that may be restricted or prohibited by the Ordinance and therefore satisfies the requirement that time, place, or manner regulations be content neutral. *See Ward*, 491 U.S. at 792; *Prime Media*, 398 F.3d at 819 ("The restrictions have no censorial purpose, as they are both viewpoint- and content-neutral and regulate only the non-expressive components of billboards").

A law that is a content-neutral time, place, and manner restriction of a traditional public forum comports with the First Amendment if it serves a significant government interest, is narrowly tailored to that interest, and leaves open adequate alternative channels of communication

for the information. *Harrington v. City of Brentwood*, 726 F.3d 861, 864 (6th Cir. 2013). The Ordinance satisfies these requirements.

### 1. The Ordinance serves a significant government interest.

The U.S. Supreme Court has held that the government has a substantial interest in protecting its citizens from unwelcome noise. *Ward*, 491 U.S. at 796. This interest is not limited to the home; the government may act to protect even such traditional public forums as city streets and sidewalks from excessive noise. *Gaughan v. City of Cleveland*, 2005 U.S. Dist. LEXIS 29862, *36 (N.D. Ohio Nov. 29, 2005) (citing *Ward*, 491 U.S. at 796). Moreover, the Ohio legislature and Ohio courts recognize that a municipality has a significant interest in the preservation of peace by allowing for the regulation of express matters such as "noise and disturbance." *See* Ohio Rev. Code § 715.49 ("a municipal corporation may prevent riot, gambling, noise and disturbance, and indecent and disorderly conduct or assemblages, preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants."); *Pouliot*, 2011-Ohio-2504, *P15. Here, the Ordinance serves a significant government interest in the preservation of peace by regulating unwelcome noise.

### 2. The Ordinance is narrowly tailored and leaves open adequate alternative channels for communication.

An ordinance is narrowly tailored if it does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799. The requirement that an ordinance be narrowly tailored does not require that the ordinance be "the least restrictive or least intrusive means" of accomplishing the government's goal. *Id.* at 798. A regulation does not violate the First Amendment "simply because there is some imaginable alternative that might be less burdensome on speech." *Lexington H-L Servs. v. Lexington-Fayette Urban Cnty. Gov't*, 879 F.3d 224, 229 (6th Cir. 2018) (quoting *Ward*, 491 U.S. at 797). The

6

requirement of narrow tailoring is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). As such, even "[a] complete ban can be narrowly tailored, but only if each activity within the proscription's scope is an appropriately targeted evil." *Frisby v. Schultz*, 487 U.S. 474, 485 (1988). The Ordinance does not proscribe all noise, but only "unreasonable noise" and "loud sound," and then only those noises and sounds which are likely to inconvenience or annoy the reasonable person, and not the hypersensitive.

The government may impose reasonable regulations upon protected speech so long as it leaves open alternative channels of communication. *Ward*, 491 U.S. at 791. An alternative channel of communication can be adequate even when the speaker is denied its best or favored means of communication. *Harrington v. City of Brentwood*, 726 F.3d 861, 865 (6th Cir. 2013) (citing *Phelps-Roper v. Strickland*, 539 F.3d 356, 372 (6th Cir. 2008)). The key for purposes of the adequate-alternatives analysis is whether the proffered alternatives allow the speaker to reach its intended audience. *Id.*

Plaintiffs argue that the Ordinance's "exemptions transform an otherwise generally applicable law . . . into one that discriminates based on speaker and therefore content." (ECF No. 3 at ¶ 6). In support, they cite *Sierra Club v. City of Boise*, 2024 U.S. Dist. LEXIS 79719 (D. Idaho Apr. 29, 2024) where the law at issue exempted the owners of "any outdoor Municipal, school, religious, or publicly owned property or facility" from its megaphone restriction. The exemptions in the Ordinance here are distinguishable from those in the megaphone restriction in *Sierra Club*. In *Sierra Club*, the exemptions applied to ***all sounds*** emanating from a megaphone. Here, the Ordinance's exemptions are only applicable in the context of "***live outdoor musical or theatrical***

7

*performances or concerts* conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization[.]"  *See* Ordinance at (a)(6)(B)(2) (emphasis added).  Even then, the Ordinance's exemptions allow for live outdoor music, theatrical performances, or concerts where the use is legal under the Zoning Code or a permit is obtained. Plaintiffs do not claim they have been unconstitutionally deprived of the right to perform music; but even if they were, they would be permitted to do so where it is legal under the Zoning Code or if they received a permit from the City, regardless of their association with any "educational, charitable, governmental or religious organization[.]"

At bottom, nothing in the Ordinance prohibits Plaintiffs from expressing their pro-life viewpoints, and they admit they continue to do so.  The Ordinance simply regulates "*unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities . . .*" (emphasis added).  Crucially, the Ordinance does not categorically ban the use of megaphones or other sound-amplifying devices, but merely places reasonable restrictions on their use when they cause unreasonable noise that causes inconvenience and annoyance to a reasonable person.  Plaintiffs are still able to advocate in light of the Ordinance and this reasonable restriction is narrowly tailored to serve the government interest.

### B.  The Ordinance is neither vague nor overbroad.

Plaintiffs argue, in the alternative, that the Ordinance is impermissibly vague and overbroad, but the plain language of the Ordinance provides fair warning of the prohibited activity, and its content is not overbroad. The Ohio Supreme Court has long held that a presumption exists that all legislative enactments are constitutional and that courts shall apply every presumption and relevant rule of construction to uphold a challenged statute or ordinance, if at all possible.  *Pouliot*, 2011-Ohio-2504, *P14  (citing *State v. Dorso*, 446 N.E.2d 449 (Ohio 1983)).  An ordinance is

void for vagueness "if its prohibitions are not clearly defined." *Gaughan*, 212 F. App'x at 409 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).  Specifically, a law is impermissibly vague if it "denies fair notice of the standard of conduct for which the citizen is to be held accountable," or gives law enforcement officials "an unrestricted delegation of power which leaves the definition of its terms to [them]." *Id.* (quoting *Am.-Arab Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608-09 (6th Cir. 2005)).  A regulation is overbroad if it "reaches a substantial number of impermissible applications' relative to [its] legitimate sweep." *Id.* at 415 (citing *Odle v. Decatur County*, 421 F.3d 386, 393 (6th Cir. 2005)).  The Ordinance here is neither vague nor overbroad.

### 1. The Ordinance is not vague.

To interpret a state or municipal ordinance, federal courts look to see whether state courts have spoken on the issue.  *Gaughan*, 212 F. App'x at 409 (citing *Grayned*, 408 U.S. at 109-11). If a state court has not addressed the ordinance at issue, federal courts will look to the "words of the ordinance itself, the interpretations the state court has given to analogous statutes, and, perhaps to some degree, . . . the interpretation of the statute given by those charged with enforcing it." *Id.* at 409-10 (citing *Grayned*, 408 U.S. at 110) (cleaned up).  "Significantly, the court is to apply a narrowing construction to a state statute if the state courts in question have applied a narrowing construction to a similar statute." *Id.* at 410 (citing *Grayned*, 408 U.S. at 111-12; *see also Shuttlesworth v. City of Birmingham*, 382 U.S. 87, 91 (1965) (providing that federal courts must defer to any narrowing construction given to state ordinances by the state court).

The Ohio Supreme Court has not examined this specific Ordinance, but it has examined a similar ordinance in *State v. Dorso*, 446 N.E.2d 449 (Ohio 1983).  In *Dorso*, the Ohio Supreme Court evaluated a Cincinnati ordinance regulating the playing of sound that "disturb[s] the peace

and quiet of the neighborhood." *Id.* at 450.  In interpreting the statute, the Ohio Supreme Court first noted that it was "obligated to indulge every reasonable interpretation favoring the ordinance in order to sustain it."  *Id.*  It then adopted a reasonable person standard in interpreting the ordinance.  *Id.* at 452.  The Ohio Supreme Court in *Dorso* held that the Cincinnati ordinance prohibited the playing of music and amplification of sound "in a manner which could be anticipated to offend the reasonable person, *i.e.*, the individual of common sensibilities."  *Id.*  That is, the ordinance "proscribe[d] the transmission of sounds which disrupt the reasonable conduct of basic human activities, *e.g.*, conversation or sleep" and "does not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive."  *Id.*  The court then held that the objective reasonable person standard gave fair notice of the conduct prohibited, and thus, the Cincinnati ordinance was not impermissibly vague.  *Id.* at 453.

Based on the Ohio Supreme Court's interpretation of the Cincinnati ordinance in *Dorso*, the Sixth Circuit Court of Appeals adopted the Ohio Supreme Court's narrow construction and applied a reasonable person standard to a Cleveland sound ordinance because of the similarities between the Cleveland sound ordinance and the Cincinnati ordinance.  *See Gaughan*, 212 F. App'x at 410.  As such, the Sixth Circuit found that the Cleveland sound ordinance did "not permit the imposition of criminal liability upon a party whose conduct disturbs only the hypersensitive."  *Id.* at 412 (quoting *Dorso*, 446 N.E.2d at 452).

Most notably, in *City of Akron v. Pouliot*, 2011-Ohio-2504 (Ohio Ct. App. 2011), the Court of Appeals of Ohio interpreted Akron City Code ("ACC") 132.16, which states: "No person shall generate or permit to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum,

piano or other musical or percussion instrument." *Id.* at *P6.  ACC 132.16 is nearly identical to the Ordinance here.  Relying on *Dorso*, the Ohio Court of Appeals found that ACC 132.16 was neither vague nor overbroad.  *Id.* at *P18.  It did not regulate the content of speech; rather, it merely proscribed the generation of "unreasonable" sounds that would likely disturb "persons of ordinary sensibilities," *i.e.*, "the reasonable person."  *Id.* at *P10.  Therefore, the court concluded that ACC 132.16 provided fair warning of the conduct proscribed and the constitutional challenges to it failed.  *Id.* at *P10, P18.

Here, Plaintiffs argue that the Ordinance is vague because it does not define "annoyance." (ECF No. 3 at ¶ 11).  However, the use of the term "annoy" or "annoying" does not automatically make an ordinance impermissibly vague.  *Gaughan*, 212 F. App'x at 412.  Plaintiffs' citation of *Coates v. City of Cincinnati*, 402 U.S. 611 (1971), to support their position that the use of the word "annoying" renders the Ordinance vague was explicitly rejected by the Sixth Circuit in *Gaughan*. 212 F. App'x at 412.  In *Coates*, because the Ohio Supreme Court did not give a narrowing construction to the ordinance at issue, the Supreme Court was "relegated . . . to the words of the ordinance itself."  *Coates*, 402 U.S. at 614.  Accordingly, the Court held that the ordinance containing the term "annoying" was impermissibly vague because the ordinance "did not indicate upon whose sensitivity a violation does depend—the sensitivity of the judge or jury, the sensitivity of the arresting officer, or the sensitivity of a hypothetical reasonable man."  *Id.* at 613.

Unlike *Coates*, here, this Court is guided by a narrow construction of similar statutes in *Dorso* and *Pouliot*, as well as the Sixth Circuit's approval of the Ohio courts' interpretation of such statutes in *Gaughan*, all decided after *Coates*.  Here, a violation of the Ordinance depends upon the sensitivity of "persons of ordinary sensibilities" which is akin to the reasonable person

standard.[1]  *See also State v. Carrick*, 2010 Ohio 6422, ¶ 11 ("In short, Ohio courts have concluded that an ordinance that regulates the volume of noise as distinguished from the content of speech is not unconstitutionally vague if it incorporates a reasonable person standard."). Similar language is also included in Ohio's disorderly conduct statute, Ohio Rev. Code § 2917.11, which prohibits causing unreasonable "annoyance" and "inconvenience" as does the Ordinance. Accordingly, the Ordinance provides constitutionally sufficient fair warning for what conduct is criminally punishable and is not unconstitutionally vague.

### 2.  *The Ordinance is not substantially overbroad.*

"Where a plaintiff makes a facial challenge under the First Amendment to a statute's constitutionality, the 'facial challenge' is an 'overbreadth challenge.'" *Fambrough v. City of E. Cleveland*, 2023 U.S. Dist. LEXIS 141805, *41 (N.D. Ohio Aug. 14, 2023) (quoting *Speet v. Schuette*, 726 F.3d 867, 872 (6th Cir. 2013)).  A plaintiff must show substantial overbreadth—namely, that the statute prohibits "a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]" *Id.* (citing *Speet*, 726 F.3d at 872). Only a statute that is substantially overbroad may be invalidated on its face.  *Id.* (citing *City of Houston v. Hill*, 482 U.S. 451, 458 (1987)).  "To succeed in an overbreadth challenge, therefore, a plaintiff must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances exist in which the [statute] cannot be applied constitutionally." *Id.*  (quoting *Speet*, 726 F.3d at 873)).

Plaintiffs argue that Ordinance here invites arbitrary, discriminatory enforcement.  The Supreme Court in *Ward* rejected a facial challenge to a noise ordinance where the theory was that government officials purportedly had unbridled discretion over noise amplification:

---

[1] For these reasons, Plaintiffs' argument that the Ordinance is vague because it fails to sufficiently define "unreasonable noise," "loud sound," or "ordinary sensibilities" should also be rejected.  (ECF No. 3 at ¶ 11).

> [G]overnment ha[s] a substantial interest in protecting its citizens from unwelcome noise. This interest is perhaps at its greatest when government seeks to protect the well-being, tranquility, and privacy of the home, but it is by no means limited to that context, for the government may act to protect even such traditional public forums as city streets and parks from excessive noise.

*Ward,* 491 U.S. at 796 (quotations and citations omitted). While "the officials implementing them will exercise considerable discretion, perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* at 794; *see, e.g.*, *Dorso*, 446 N.E.2d at 453 (recognizing that noise ordinances will be "inherently imperfect"). "The validity of [time, place, or manner] regulations does not turn on a judge's agreement with the responsible decisionmaker concerning the most appropriate method for promoting significant government interests or the degree to which those interests should be promoted." *Id.* at 800 (quotation omitted).

Here, Plaintiffs claim that the officers only cited and arrested Mr. Knotts, ignoring the abortion escorts making noise with comparable devices. (ECF No. 3 at ¶ 12). Yet, as Plaintiffs concede in their Complaint, a local resident phoned the police, specifically complaining of excessive noise from Mr. Knotts' megaphone. (ECF No. 1 at ¶¶ 58-59). The officers responded to a specific complaint—they did not arbitrarily enforce the Ordinance. As such, Plaintiffs' overbreadth argument fails.

Plaintiffs have not established that the Ordinance impermissibly infringes on their First Amendment rights and, thus, they have not established that they are likely to succeed on the merits. These facts weigh against granting their Motion for a Preliminary Injunction.

## II. <u>Plaintiffs Will Not Suffer Irreparable Harm Without The Injunction.</u>

To merit injunctive relief, "an injury must be both certain and immediate," not "speculative or theoretical." *Brown v. Hamilton Cnty.*, 2023 U.S. App. LEXIS 4232, *5 (6th Cir. Feb. 22, 2023)

(citing *D.T. v. Sumner Cty. Sch.*, 942 F.3d 324, 327 (6th Cir. 2019)).  Plaintiffs seek a preliminary injunction claiming that they are irreparably harmed by the Ordinance, while simultaneously acknowledging they continue to exercise their First Amendment rights with no interference or restrictions, other than those self-imposed.  (ECF No. 3 at ¶ 3).  As demonstrated by Plaintiffs' own actions in continuing to demonstrate, their injuries are speculative.

Further, if a moving party cannot establish a likelihood of success on the merits of a First Amendment claim, the party has not established the possibility of loss of First Amendment rights as a result.  *See Connection Dist. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998).  For the reasons set forth in the previous section, Plaintiffs cannot establish a likelihood of success on the merits. Therefore, this factor weighs against granting Plaintiffs' request for a preliminary injunction.

### III.     The Balance of Equities Does Not Favor A Preliminary Injunction.

It is in the public interest to give "effect to the will of the people by enforcing the laws they and their representatives enact, absent a constitutional issue."  *OPAWL - Bldg. AAPI Feminist Leadership v. Yost*, 118 F.4th 770, 785 (6th Cir. 2024) (quoting *Thompson v. DeWine*, 959 F.3d 804, 812 (6th Cir. 2020)) (internal quotations omitted).  Plaintiffs' arguments put their personal interests before those of other members of the community, as well as the City of Cuyahoga Falls' significant government interest in enforcing the Ordinance.  Plaintiffs acknowledge that they continue to exercise their First Amendment rights.  (ECF No. 3 at ¶ 3).  Accordingly, this factor weighs against granting Plaintiffs' Motion for a Preliminary Injunction.

### IV.     A Preliminary Injunction Is Not In The Public Interest.

The purpose of a preliminary injunction is to preserve the status quo.  *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 873 n.13 (6th Cir. 2007) (quoting *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004)).  Granting Plaintiffs' request for a

preliminary injunction disrupts the status quo by invalidating an Ordinance that has otherwise been in effect and serves a significant government interest.  As such, this factor also weights against granting Plaintiffs' Motion for a Preliminary Injunction.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Preliminary Injunction.

Respectfully submitted,

DICKIE, MCCAMEY & CHILCOTE, P.C.

By: /s/ Paul J. Schumacher
    **PAUL J. SCHUMACHER (0014370)**
    600 Superior Avenue East
    Fifth Third Center, Suite 2330
    Cleveland, Ohio 44114
    216.685.1827 – Telephone
    888.811.7144 – Facsimile
    pschumacher@dmclaw.com

    **PAUL A. ROMAN, JR.**
    **MARIA V. HANLEY**
    Four Gateway Center
    444 Liberty Avenue, Suite 1000
    Pittsburgh, Pennsylvania 15222
    412.281.7272 – Telephone
    888.811.7144 – Facsimile
    proman@dmclaw.com
    mhanley@dmclaw.com

    **Attorneys for Defendants**
    **City of Cuyahoga Falls, Dylan**
    **Paratore, and Bradford Dobney**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 20, 2025, I filed the foregoing **Memorandum in Opposition to Plaintiffs' Motion for a Preliminary Injunction and Incorporated Memorandum of Points and Authorities in Support Thereof** with the Clerk using the CM/ECF System, which will send notification of such filing to all counsel of record.

DICKIE, McCAMEY & CHILCOTE, P.C.

By: /s/ Paul J. Schumacher

**PAUL J. SCHUMACHER**

**Attorneys for Defendants
City of Cuyahoga Falls, Dylan
Paratore, and Bradford Dobney**