### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| ZACHARY KNOTTS and LINDSAY KNOTTS, <br><br> *Plaintiffs,* <br><br><br> *v.* <br><br> CITY OF CUYAHOGA FALLS, DYLAN PARATORE, in his individual and official capacities, and BRADFORD DOBNEY, in his individual and official capacities, <br><br><br> *Defendants.* | CASE NO.: 5:25-cv-01120 <br><br> **JUDGE JOHN R. ADAMS** |

---

### PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiffs Zachary and Lindsay Knotts respectfully submit the following opposition to Defendants' Partial Motion to Dismiss Plaintiffs' Complaint.

# TABLE OF CONTENTS

STATEMENT OF FACTS ...........................................................................................................1

ARGUMENT...........................................................................................................................2

    I.   Introduction ................................................................................................................2

    II.  Legal Standard ..........................................................................................................3

    III. Plaintiffs Have Sufficiently Alleged Facts to Support Facial Challenges in
             Counts I and VII...........................................................................................3

        A.  The Ordinance is a content-based restriction and fails strict scrutiny.................3

        B.  Even if the Ordinance was content-neutral, it is still unlawful because it burdens more
            speech than necessary. .................................................................................6

    IV. Plaintiffs Have Sufficiently Alleged Facts to Support Counts II and VII that the
             Ordinance is Unconstitutionally Vague. .......................................................8

    V.  Plaintiffs Have Sufficiently Alleged Facts to Support an As-Applied Challenge to the
             Ordinance Under the Free Speech Clause in Counts III and VII .......................12

    VI. Plaintiffs Have Sufficiently Alleged Facts To Support Counts IV and VII that the
             Ordinance Violates The Free Exercise Clause of the U.S. and Ohio
             Constitutions .............................................................................................15

        A.  Count IV – First Amendment Free Exercise Claim.......................................15

           i.      The Ordinance's Facial Unconstitutionality......................................15

           ii.     Defendants' Religious Discrimination ................................................16

        B.  Count VI – Violation of Art. I, § 7 of the Ohio State Constitution ...........................17

    VII.   Plaintiffs Have Sufficiently Alleged in County V that the Ordinance Violates
             the Equal Protection Clause ........................................................................18

CONCLUSION.......................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610 (2020) ............................................................4

*Cantwell v. Conn.*, 310 U.S. 296 (1940) ..........................................................................................18

*Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520 (2012) ........................................16

*Citizens United v. FEC*, 558 U.S. 310 (2010) ............................................................................... 4, 5

*City of Akron v. Pouliot*, 2011-Ohio-2504 (Ohio Ct. App. 2011) ..................................................10

*Coates v. Cincinnati,* 402 U.S. 611 (1971) ........................................................................................9

*Franks v. Rubitschun*, 312 F. App'x 764 (6th Cir. 2009) ................................................................18

*Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122 (D.C. Cir. 2023) ............12

*Fulton v. City of Philadelphia*, 593 U.S. 522 (2021) .......................................................................16

*Gaughan v. City of Cleveland*, 212 F. App'x. 405 (6th Cir. 2011) ........................................9, 10, 13

*Green Genie, Inc. v. City of Detroit*, 63 F.4th 521 (6th Cir. 2023) ..................................................19

*Harrington v. City of Brentwood*, 726 F.3d 861 (6th Cir. 2013) ......................................................7

*Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489 (1982) ...............................................8

*Hoye v. City of Oakland*, 653 F.3d 835 (9th Cir. 2011) ...................................................................7

*Humphrey v. Lane*, 728 N.E.2d 1039 (Ohio 2000) ...................................................................17, 18

*J.B. v. Harwood*, No. 24-3024, 2024 U.S. App. LEXIS 28147 (6th Cir. Nov. 4, 2024) .............. 3, 18

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507 (2022) ..................................................................16

*Koger v. Mohr*, 964 F.3d 532 (6th Cir. 2020) ..................................................................................18

*Lakewood v. Plain Dealer*, 486 U.S. 750 (1988) .............................................................................11

*Lionhart v. Foster*, 100 F. Supp. 2d 383 (E.D. La. 1999) ................................................................8

*Masterpiece Cakeshop, Ltd v. Colo. Civil Rights Comm'n.*, 584 U.S. 617 (2018) ...........................16

*McCullen v. Coakley*, 573 U.S. 464 (2014) ......................................................................................7

*Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021) ...........................................................15

*Nichols v. Gulfport*, 589 So. 2d 1280 (Miss. 1991)...............................................................9

*Norton Outdoor Advert., Inc. v. St. Bernard*, 99 F.4th 840 (6th Cir. 2024) ........................3

*Papachristou v. Jacksonville*, 405 U.S. 156 (1972) ..............................................................11

*Reed v. Town of Gilbert*, 576 U.S. 155 (2016) ......................................................................4

*Reform Am. v. City of Detroit*, 37 F.4th 1138 (6th Cir. 2022) ..............................................5

*Reno v. ALCU*, 521 U.S. 844 (1997) .....................................................................................8

*Republican Party of Minn. v. White*, 536 U. S. 765 (2002) ...................................................6

*Rosenberger v. Univ. of Va.*, 515 U.S. 819 (1995).................................................................12

*Saia v. New York*, 334 U.S. 558 (1948)..................................................................................3

*Sierra Club v. Boise*, 2024 U.S. Dist. LEXIS 79719 (D. Idaho Apr. 29, 2024) ...................4, 5

*Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400 (6th Cir. 2022)...............3, 7

*Smith v. Goguen*, 415 U.S. 566 (1974) ...................................................................................8

*St. Mark Roman Catholic Parish v. City of Phoenix*, 2010 U.S. Dist. LEXIS 145304 (D. Ariz. 2010)..........7

*State v. Carrick*, 965 N.E.2d 264 (Ohio 2012) ......................................................................10

*State v. Dorso*, 446 N.E.2d 449 (Ohio 1983) .........................................................................9, 10

*Tanner v. City of Va. Beach*, 674 S.E.2d 848 (Va. 2009) .......................................................9

*Thelen v. State*, 526 S.E.2d 60 (Ga. 2000) ............................................................................9

*Thomas v. Chi Park Dist.*, 534 U.S. 316 (2002)....................................................................13

*United States v. Carolene Prods. Co.*, 304 U.S. 144 (1938) ..................................................8

*United States v. Williams*, 553 U.S. 285 (2008) ....................................................................8, 11

**Statutes**

City of Cuyahoga Falls Ordinance § 509.03(a)(6) ..................................................................1, 2, 5

## STATEMENT OF FACTS

Plaintiffs Zachary and Lindsay Knotts hold sincere religious convictions that compel them to spend their Saturday mornings engaging in sidewalk advocacy to save the lives of the unborn. Complaint (Doc. 1), at ¶ 5. In accordance with these deeply held religious beliefs, the Knotts regularly travel to the Northeast Ohio Women's Center ("NEOWC") abortion clinic to engage in speech opposing abortion. *Id.* at ¶¶ 6, 43, 51.

The City of Cuyahoga Falls enforces Ordinance § 509.03(a)(6) (hereinafter "The Ordinance"), which prohibits the use of sound amplification devices, including instruments or megaphones, on public sidewalks. *Id.* at ¶¶ 81-84. However, the Ordinance contains explicit exemptions that favor certain speakers over others, specifically exempting "live outdoor musical or theatrical performances or concerts conducted by or on the property of any educational, charitable, governmental or religious organization." *Id.*

The Knotts conduct their religious exercise and pro-life advocacy on the public sidewalk outside NEOWC, which constitutes a traditional public forum. *Id.* at ¶ 43. To effectively communicate their message amid surrounding traffic noise, the Knotts use a small battery-operated megaphone. *Id.* at ¶¶ 7-8, 44-47, 55. Even with the megaphone, their message is easily drowned out by nearby vehicle traffic. *Id.* at ¶¶ 55-56. Without amplification, the Knotts cannot reach their intended audience due to the ambient noise levels.

When the Knotts first began their sidewalk advocacy, the police department was initially confused about the proper interpretation of the Ordinance and gave Mr. Knotts assurances that his use of modest amplified sounds would not violate the Ordinance. *Id.* at ¶¶ 32-34.

On December 28, 2024, both the Knotts and abortion clinic escorts were simultaneously present at the identical location outside NEOWC, engaging in amplified sound activities. *Id.* at ¶¶ 54-56. Mrs. Knotts' video recording captures the events of that morning, demonstrating the stark

disparity in enforcement. The abortion clinic escorts used whistles, kazoos, and other noise-making instruments specifically intended to drown out the Knotts' pro-life message. *Id.* at ¶¶ 46, 56. On numerous occasions, police had witnessed abortion clinic escorts using noise amplification devices and playing music without taking any enforcement action. *Id.* at ¶¶ 13-14. The escorts' amplified sounds were intentionally deployed as counter-speech, creating "annoying" noise with instruments that falls squarely within the Ordinance's prohibition against generating "unreasonable noise" that causes "inconvenience" or "annoyance." *Id.* at ¶¶ 54-56. Despite both groups engaging in similar amplified sound activities at the same time and location, when police arrived, they arrested only Mr. Knotts. *Id.* at ¶ 66. Significantly, neither Defendant officer personally witnessed Mr. Knotts using the megaphone because it had run out of batteries prior to their arrival. *Id.* at ¶¶ 61, 65.

The discriminatory treatment extended beyond the arrest itself. When Mrs. Knotts attempted to file complaints about the abortion clinic escorts' threatening conduct and noise violations, officers dismissed her concerns and stated the threats were "not a crime." *Id.* at ¶¶ 37-39, 67. The Knotts had complained about the escorts' noise (which was intentionally loud enough to drown out the Knotts' megaphone) and threats against them, but Defendants took no action. *Id.* at ¶¶ 13, 56, 63, 66-68.

## ARGUMENT

### I.   Introduction

Defendants seek partial dismissal of many of Plaintiffs' constitutional challenges to City of Cuyahoga Falls, Ohio § 509.03(a)(6) (hereinafter "the Ordinance"), which prohibits only certain speakers (including Plaintiffs) from using a battery-operated megaphone when engaging in speech and religious expression on a public sidewalk. The challenged Ordinance has no limits on time and place, and its restrictions target only certain speakers, discriminating based on content. Defendants also ignore extensively pleaded facts demonstrating that the Ordinance was discriminatorily applied only

to Plaintiffs and not to comparable use of musical instruments by speakers with the opposite viewpoint.

In *Saia v. New York*, the Supreme Court enshrined the right to use a megaphone, subject to reasonable time, place, and manner restrictions. 334 U.S. 558 (1948). Defendants' arguments cut against the Supreme Court's clear mandate in *Saia* and misapply constitutional standards in an effort to rehabilitate a facially flawed and discriminatory Ordinance that allows some messages and disfavors others based on the speaker and message, although Defendants try to ignore this discrimination. For the reasons explained above, this Court should deny Defendants' Partial Motion to Dismiss.

## II.  <u>Legal Standard</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *J.B. v. Harwood*, No. 24-3024, 2024 U.S. App. LEXIS 28147, at *2 (6th Cir. Nov. 4, 2024) (citing *Doe v. Miami Univ.*, 882 F.3d 579, 588 (6th Cir. 2018)). "When reviewing a 12(b)(6) motion to dismiss, a court must 'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Id.* (quoting *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)).

## III.  <u>Plaintiffs Have Sufficiently Alleged Facts to Support Facial Challenges in Counts I and VII.</u>

### A.  The Ordinance is a content-based restriction and fails strict scrutiny.

The Knotts protested, and continue to protest, on a public sidewalk. A public sidewalk is a traditional public forum. *Sisters For Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022). In such a public forum, "regulations or laws that are content based . . . are subject to strict scrutiny." *Norton Outdoor Advert., Inc. v. St. Bernard*, 99 F.4th 840, 847 (6th Cir. 2024) (citing *Reed v. Gilbert*, 576 U.S. 155, 163 (2015)). Strict scrutiny is exacting; it "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens*

*United v. FEC*, 558 U.S. 310, 340 (2010) (quoting *FEC v. Wisc. Right to Life* 551 U.S. 449, 464 (2007)). "Content-based laws—those that target speech based on its communicative content—are presumptively unconstitutional[.]" *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

While the City contends that its Ordinance is content-neutral, the very language of the Ordinance demonstrates otherwise; it bans only certain speakers from using sound amplification devices and specifically exempts other speakers such as those putting on shows and exhibitions or parades for which a permit has been obtained, or those conducting live outdoor musical or theatrical performances or concerts conducted by or on the property of any educational, charitable, governmental or religious organization. Compl., at ¶¶ 81-84. These exceptions are the crux of Plaintiffs' claim and are the core argument for why the Ordinance is unconstitutional.

The Supreme Court has explained that regulations are content-based if they "draw[] distinctions based on the message a speaker conveys" or "cannot be justified without reference to the content of the regulated speech." *Reed,* 576 U.S. at 163-64 (internal citations omitted). *See also Barr v. Am. Ass'n of Pol. Consultants*, 591 U.S. 610, 618-19 (2020). "Prohibited, too, are restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United*, 558 U.S. at 340. In *Barr*, for example, the Court rejected the government's argument that a statute banning robocalls except for those by the government (i.e., authorized debt collectors) to collect a debt was not content-neutral. 591 U.S. at 619. Similar to *Barr*, the Ordinance here bans the use of amplification devices to speak except by certain preferred speakers.

Likewise, the U.S. District Court for the District of Idaho recently found a similarly worded city ordinance to be content based for this very reason. *See Sierra Club v. Boise*, No. 1:24-cv-00169-DCN, 2024 U.S. Dist. LEXIS 79719 (D. Idaho Apr. 29, 2024) (order granting preliminary injunction). Boise's Noise Control Code exempted the owners of "any outdoor Municipal, school, religious or publicly owned property or facility" from its ban on sound-amplification devices, "*regardless* of the

location of the exempted property." *Id.* at 12. The court noted that a bakery and a church holding a joint bake sale would be in the ridiculous position where the bakery would be limited from the use of megaphones, while "if the church wanted to use a megaphone to share the *same* message in the *same* general location, it could do so without any restrictions." *Id.* at 13 (emphasis in original).

Here, the Ordinance creates explicit speaker-based classifications that require enforcement officials to determine a speaker's identity and organizational affiliation before applying the restriction. The law permits sound amplification by religious organizations, educational institutions, and government entities while prohibiting identical conduct by individual speakers like Plaintiffs. Such speaker-based distinctions are inherently content-based because they favor certain messages over others. The City's Motion to Dismiss completely ignores this argument, never once addressing the Ordinance's content-based exceptions. It makes no attempt to argue how an ordinance with such exemptions satisfies constitutional rigor. In fact, the City claims that "the Ordinance does not purport to regulate the content of protected speech," Def. MTD (Doc. 16-1) at 5, despite the fact the Ordinance expressly on its face discriminates based on the content of the speaker. The Ordinance at (B)(2).

Content-based regulations are subject to strict scrutiny, an exacting standard that "requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340 (quoting *FEC v. Wisc. Right to Life* 551 U.S. 449, 464 (2007)). Under strict scrutiny, the government has the burden of demonstrating that it has chosen "the least-restrictive means available to serve a compelling interest." *Reform Am. v. City of Detroit*, 37 F.4th 1138, 1156 (6th Cir. 2022).

The City fails to satisfy this exacting standard. While the City asserts that noise abatement is a compelling interest, it can hardly be said that the purpose of the Ordinance here is to legitimately address noise abatement, when all live outdoor musical performances or concerts conducted by or on

the property of any educational, charitable, governmental, or religious organization are still permitted. Rather than respond to this problem, the City ignores it. At the same time the Knotts were present on the sidewalk and were prohibited from using a small battery operated megaphone that was no louder than noise generated by traffic, Compl., at ¶ 56, one or more speakers representing a preferred organization would have been permitted to do the same, or even to engage in significantly louder noise that would in fact disturb a reasonable person. A "law cannot be regarded as protecting an interest of the highest order, and thus as justifying a restriction on … speech, when it leaves appreciable damage to that supposedly vital interest unprohibited[.]" *Republican Party of Minn. v. White*, 536 U. S. 765, 780 (2002). In short, the Ordinance's broad carve-out for certain speakers and organizations belies the purported interests it claims to protect. The more the City emphasizes the importance of its stated interests, the more those interests are undermined by its decision to permit extensive noise from favored speakers.

Finally, the Ordinance hardly represents the least restrictive means for furthering any asserted compelling interest. Neither time nor place are used to restrict speech. The Ordinance covers the *entire* city during *all* hours, at *all* places, and leaves no possible way for the Knotts to deliver their message in a manner that can be heard. Thus, Plaintiffs have sufficiently alleged that the Ordinance is not content-neutral and fails First Amendment scrutiny.

### B. Even if the Ordinance was content-neutral, it is still unlawful because it burdens more speech than is necessary.

Even if the City was able to demonstrate that its Ordinance constitutes a content-neutral and reasonable time, place and manner restriction on speech, it still fails to satisfy the applicable intermediate scrutiny test.[1] A content-neutral regulation of speech "is not something this country

---

[1] This test, while similar to the strict scrutiny test, is different. *See McCullen v. Coakley*, 573 U.S. 464, 486 (2014) (noting that a content-neutral regulation, "unlike a content-based restriction of speech, need not be the least restrictive or least intrusive means of serving the government's interests. But the

lightly allows." *Sisters For Life*, 56 F.4th at 404. A content-neutral restriction in a traditional public forum, like the sidewalks here, must (1) serve a significant government interest; (2) be narrowly tailored to that interest; and (3) leave[] open adequate alternative channels of communication for the information. *Harrington v. City of Brentwood*, 726 F.3d 861, 865 (6th Cir. 2013) (citing *Ward Rock Against Racism*, 491 U.S. 781, 791 (1989). "To meet the requirement of narrow tailoring, the government must demonstrate that alternative measures that burden substantially less speech would fail to achieve the government's interests, not simply that the chosen route is easier." *McCullen v. Coakley*, 573 U.S. 464, 495 (2014). The key for purposes of the adequate-alternatives analysis is whether the proffered alternatives allow the speaker to reach its intended audience. *Harrington*, 726 F.3d at 865.

The Knotts have a right to speak and preach to mothers and passersby near the NEOWC. "An alternative [channel of communication] is not ample if the speaker is not permitted to reach the intended audience." *Hoye v. City of Oakland*, 653 F.3d 835, 859 (9th Cir. 2011) (internal quotation and citation omitted). The Knotts have explained that even with the use of the megaphone, their message is easily drowned out by nearby traffic, not to mention the cacophony of kazoos. Compl., at ¶¶ 55-56. The Knotts cannot reach their intended audience without the assistance of a megaphone. The City of Cuyahoga Falls could easily implement narrower, more specific ordinances that provide sufficient alternatives; such as regulating noise based on decibel levels, requiring that the noise be heard from a certain distance from the source of the noise, or regulating sound at specific times. Thus, the City's failure to consider these obvious alternatives demonstrates the Ordinance's constitutional inadequacy. *St. Mark Roman Catholic Parish v. City of Phoenix*, 2010 U.S. Dist. LEXIS 145304, *49-50 (D. Ariz. 2010) ("The Noise Ordinance does not contain an objective standard, such as a decibel level, under which loud, disturbing, and unnecessary sounds are targeted."); *see also Lionhart v. Foster*, 100 F. Supp. 2d 383,

---

government still may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals") (internal quotations and citation omitted).

384 (E.D. La. 1999) ("La. Rev. Stat. § 14:103.2 invites prosecution based on subjective factors or worse, distaste for the content of the sound and not its decibel level. Therefore, the statute is not narrowly tailored.").

IV. **Plaintiffs Have Sufficiently Alleged Facts To Support Counts II and VII that the Ordinance is Unconstitutionally Vague.**

The Supreme Court regularly cautions against vague laws that infringe on First Amendment rights. *See, Smith v. Goguen*, 415 U.S. 566, 573 (1974) ("Where a statute's literal scope, unaided by a narrowing state court interpretation, is capable of reaching expression sheltered by the First Amendment, the [vagueness] doctrine demands a greater degree of specificity…"); *Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982) (If "the law interferes with the right of free speech… a more stringent vagueness test should apply."). Defendants assert they are entitled to a presumption of constitutionality, but that presumption is obfuscated here, where the Ordinance implicates First Amendment rights. *See United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938) ("There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution, such as those of the first ten amendments."). A vague regulation of expression "raises special First Amendment concerns because of its obvious chilling effect on free speech." *Reno v. ALCU*, 521 U.S. 844, 871–72 (1997). No language from the Ohio Supreme Court can overcome the U.S. Supreme Court's clear command.

The Ordinance prohibits sounds that cause "inconvenience, annoyance or alarm" and generate "unreasonable noise," but fails to define any of these terms or provide objective criteria for their application. What annoys one person may not annoy another; what one considers unreasonable noise, another may find perfectly acceptable. These entirely subjective judgments, "without statutory definitions, narrowing context, or settled legal meanings," render the ordinance unconstitutionally vague. *United States v. Williams*, 553 U.S. 285, 306 (2008). Unlike ordinances that reference objective

standards such as decibel levels, time restrictions, or specific locations, this Ordinance provides no measurable criteria for determining violations.

The Ordinance is most like the ordinance struck down in *Coates v. Cincinnati,* 402 U.S. 611 (1971). There, the challenged ordinance prohibited "three or more persons to assemble . . . on any of the sidewalks . . . and there conduct themselves in a manner *annoying* to persons passing by." *Id.* at 611 (emphasis added). The Supreme Court noted that conduct that annoys some people does not annoy others and held the ordinance unconstitutionally vague because it "subjects the exercise of the right of assembly to an unascertainable standard, and [is] unconstitutionally broad because it authorizes the punishment of constitutionally protected conduct." *Id.* at 614 (noting that no standard of conduct was specified at all in the ordinance, so men of common intelligence must necessarily guess at its meaning) (quoting *Connally* v. *General Construction Co.*, 269 U.S. 385, 391 (1926)).[2]

Defendants' reliance on cases involving more narrowly tailored statutes is misplaced. The Cincinnati Ordinance upheld in *State v. Dorso*, 446 N.E.2d 449 (Ohio 1983), and the Cleveland ordinance upheld in *Gaughan v. City of Cleveland*, 212 F. App'x. 405 (6th Cir. 2011), are far clearer than the Ordinance at issue here. Compare the language in *Dorso*, which prohibited amplified sound that would "*disturb the peace and quiet of the neighborhood, having due regard for the proximity of places of residence,*"

---

[2] *See Tanner v. City of Va. Beach*, 674 S.E.2d 848, 853 (Va. 2009) (holding that ordinance prohibiting "unreasonably loud, disturbing and unnecessary noise," noise of "such character, intensity and duration as to be detrimental to the life or health of persons of reasonable sensitivity," failed to give "fair notice" to citizens as required by the Due Process Clause, because the provisions do not contain ascertainable standards.). "Noise that one person may consider 'loud, disturbing and unnecessary' may not disturb the sensibilities of another listener. As employed in this context, such adjectives are inherently vague because they require persons of average intelligence to guess at the meaning of those words." *Id.*; *see also Nichols v. Gulfport*, 589 So. 2d 1280, 1283 (Miss. 1991) ("The adjectives 'unnecessary' and 'unusual' modifying the noun 'noises' are inherently vague and elastic and require men of common intelligence to guess at their meaning."); *Thelen v. State*, 526 S.E.2d 60, 62 (Ga. 2000) (holding that by prohibiting "any … unnecessary or unusual sound or noise which … annoys … others," an ordinance failed "to provide the requisite clear notice and sufficiently definite warning of the conduct that is prohibited.").

*hospitals or other residential institutions and to any other conditions affected by such noises.*" *Dorso*, 446 N.E.2d at 450 (emphasis added). Or the language in *Gaughan*, which limited sounds amplified in "such a manner or at such volume as to annoy or *disturb the quiet, comfort or repose of neighboring inhabitants.*" *Gaughan*, 212 F. App'x. at 409 (emphasis added). Instead, the Ordinance here prohibits "recklessly" being the cause of "inconvenience, annoyance or alarm," by "[g]enerating … [an] unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities . . ." The Ordinance does not carry the benefit of describing (1) *what* sounds run afoul of the Ordinance, (2) *who* must be disturbed, or (3) *where* the Ordinance applies. It lacks the specific limitations of location and proximity evidenced in both the cited ordinances.

Defendants' reliance on *State v. Carrick*, 965 N.E.2d 264 (Ohio 2012) is equally unpersuasive. There, the court upheld a statute prohibiting noise that was "unreasonable" and caused "inconvenience, annoyance or alarm" at least in part due to the fact that the statute also "require[d] a culpable mental state of recklessness." *Id.* at 343-44. The court went on to note that "in order to violate [the statute], a person must act 'with heedless indifference to the consequences' in 'perversely disregard[ing] a known risk that his conduct is likely to cause a certain result.'" *Id.* at 344. No such clarification regarding a high standard of mental culpability is included in the challenged Ordinance here. The *Carrick* court also highlighted specific factual evidence that demonstrated the ordinance's lack of vagueness. Carrick's conduct—playing loud bass music late at night at volumes that prevented neighbors from sleeping and caused windows to vibrate in a house a quarter mile away—clearly fell within the prohibited noise category (as opposed to being a noise that is questionably annoying or alarming). *Id.* at 344.

Defendants also invoke *City of Akron v. Pouliot*, 2011-Ohio-2504 (Ohio Ct. App. 2011), to argue that since the Akron ordinance contained similar language and was upheld, the Ordinance here also passes muster. But the conditioning of a criminal standard of conduct to the reasonable person

standard, with use of words like "inconvenience" or "annoyance," without further explanation, does *not* provide constitutionally sufficient fair warning of what conduct is criminally punishable. As the Supreme Court explained:

> [W]e have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*United States v. Williams*, 553 U.S. 285, 306 (2008). *Williams* and *Coates* control and this Court should find that the Ordinance indeed subjects the public to an unascertainable standard.

The Ordinance's unconstitutional vagueness is further highlighted by the arbitrary and discriminatory enforcement taken against Plaintiffs. A law must not "vest[] unbridled discretion in a government official over whether to permit or deny expressive activity." *Lakewood v. Plain Dealer*, 486 U.S. 750, 755 (1988). *See Papachristou v. Jacksonville*, 405 U.S. 156, 170 (1972) ("Where… there are no standards governing the exercise of the discretion granted by the Ordinance, the scheme permits and encourages an arbitrary and discriminatory enforcement of the law."). As Plaintiffs allege, even the police department was at first confused about the proper interpretation of the Ordinance and gave Mr. Knotts assurances that his use of modest amplified sounds would *not* violate the Ordinance. Compl., at ¶¶ 32-34. Then, inconsistent with this instruction and once they knew the content of Mr. Knotts' speech, Defendants later cited, arrested, and prosecuted Mr. Knotts for using a megaphone while turning a blind eye to several other speakers engaged in similar conduct.[3] And now Defendants attempt to justify their discriminatory enforcement by arguing that they act only when a citizen complains. Not only has this reasoning been debunked, since the Knotts complained about the abortion escorts' conduct and nothing was done, Compl., at ¶¶ 13, 56, 63, 66-68, but a complaint-

---

[3] The discriminatory enforcement is exhaustively alleged in the Complaint and is outlined in more detail in Section V. below.

driven enforcement policy further obscures the line and invites content and viewpoint discrimination. Any citizen can complain of annoyance due to content or viewpoint, rather than a legitimate disturbance, and as a result, only one speaker will be punished or censored, while others are permitted to continue similar noisemaking activities and speech without reprisal. This is the heckler's veto most anathema to the First Amendment.

Because the Ordinance implicates First Amendment rights on its face *and* as applied to chill Plaintiffs' constitutionally protected speech subjecting them to criminal penalties, "the State has a heavy burden to demonstrate that the limitation" it proposes is justified under the First Amendment. *Joseph Burstyn v. Wilson*, 343 U.S. 495, 504 (1952). Defendants cannot meet this burden.

**V.  Plaintiffs Have Sufficiently Alleged Facts to Support an As-Applied Challenge to the Ordinance under the Free Speech Clause in Counts III and VII.**

"In the realm of private speech or expression, government regulation may not favor one speaker over another." *Rosenberger v. Univ. of Va.*, 515 U.S. 819, 828 (1995). "When the government targets not subject matter, but particular views taken by speakers on a subject, the violation of the First Amendment is all the more blatant." *Rosenberger*, 515 U.S. at 829. "Restrictions based on viewpoint are especially invidious; viewpoint discrimination is 'poison.'" *Frederick Douglass Found., Inc. v. District of Columbia*, 82 F.4th 1122, 1141 (D.C. Cir. 2023) (quoting *Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019) (Alito, J., concurring); *see also Rosenberger*, 515 U.S. at 829). "It is antithetical to a free society for the government to give 'one side of a debatable public question an advantage in expressing its views to the people.'" *Frederick Douglass Found., Inc.* at 1141 (quoting *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 785 (1978)). Despite the clear prohibition against viewpoint discrimination, the facts alleged in the complaint demonstrate a pattern of viewpoint discrimination and selective enforcement by multiple departments and law enforcement officials. Defendants selectively enforced the Ordinance

against pro-life speakers while ignoring identical conduct by pro-choice speakers, creating the precise evil the First Amendment forbids: government favoritism based on the speaker's message.

Defendants mistakenly rely on *Gaughan*, in their attempt to argue that no viewpoint discrimination has been alleged. *Gaughan* is inapposite here because Gaughan neither alleged a claim of viewpoint discrimination nor pleaded any facts to support such a claim. 212 F. App'x 405. Gaughan's complaint was devoid of any facts alleging that he was punished for his speech while others were allowed to engage in comparable noise and were not cited or arrested. *Id.* at 417.

Unlike *Gaughan*, Plaintiffs here have sufficiently alleged that Defendants chose not to enforce the Ordinance against favored speakers and enforced it only as to Plaintiffs (pro-life Plaintiffs). "Granting waivers to favored speakers (or, more precisely, denying them to disfavored speakers) would of course be unconstitutional." *Thomas v. Chi Park Dist.*, 534 U.S. 316, 325 (2002). Specifically, Plaintiffs allege that while Mr. Knotts was arrested for engaging in protected speech with his megaphone, clinic escorts used musical instruments or amplification, also prohibited under the Ordinance, and were not cited or arrested. Compl., at ¶¶ 56, 66. Both Plaintiff Knotts and clinic escorts simultaneously engaged in amplified sound activities at the identical location outside NEOWC. *Id.* at ¶¶ 54-56. Mrs. Knotts' video recording captures clinic escorts using whistles, kazoos, and other obnoxious noise-making devices specifically intended to drown out the Knotts' pro-life message— conduct that falls squarely within the Ordinance's prohibition against generating "unreasonable noise" that causes "inconvenience" or "annoyance." *Id.* at ¶ 56. Importantly, neither of the Defendant officers personally witnessed Mr. Knotts using the megaphone because it had run out of batteries prior to their arrival. *Id.* at ¶¶ 61, 65. As Plaintiffs also allege, Mrs. Knotts informed the officer about threats they received from abortion clinic escorts, but the officers took no action and informed her that the threats were not a crime. *Id.* at ¶ 67. To make matters worse, the discriminatory treatment did

not end with Mr. Knotts' arrest. The City then perpetuated the unlawful selective enforcement by prosecuting Mr. Knotts for many months. *Id.* at ¶¶ 70-72.

Selective enforcement claims hinge on the point of comparison, and there need be no searching here. This differential treatment—arresting pro-life speakers while ignoring identical conduct by pro-choice speakers with musical instruments prohibited by the Ordinance, all while dismissing complaints that cut against the favored viewpoint—establishes the precise pattern of viewpoint discrimination the First Amendment prohibits.

These same facts undermine the Defendants' citation of the fact that Mr. Knotts has only been arrested once. It is not a single act alone at issue here: there is on the one hand the decision to arrest and charge Mr. Knotts; and on the other, the repeated decision to never arrest or charge the pro-abortion protestors despite their many repeated uses of musical instruments that violate the Ordinance, with no consequence. *Id.* at ¶ 13. The actions of the Defendants against Mr. Knotts then went beyond that single incident; Officer Dobney explicitly told Lindsay Knotts that her husband would be arrested again with or without amplified sound if he caused annoyance, revealing enforcement based on message rather than conduct. *Id.* at ¶ 68. Enforcement was not based on noise levels or amplification, but on the perceived "annoyance" caused by the pro-life message itself. Moreover, the Defendants' conduct involved multiple departments for the City (both the police department and prosecutor's office) who carried out the viewpoint discrimination for a period of many months.

Further, it is inaccurate to suggest, as do Defendants, that Defendant police officers only arrested Knotts because they received a complaint as to the Knotts' expression. The Knotts complained of the abortion escorts' noise (which was intentionally loud enough to drown out the Knotts' megaphone) and of threats to the Knotts. Compl., at ¶¶ 13, 56, 63, 66-68. Defendants, however, did nothing. The fact that Defendants justify their conduct because a complaint was made

against only one person who happened to be expressing a pro-life viewpoint, when numerous individuals were present and engaging in the same noise activities but for an opposing viewpoint, only heightens the discrimination in light of their refusal to do anything about Mrs. Knotts' complaint.

The totality of these circumstances—selective arrest of pro-life speakers, deliberate inaction regarding identical conduct by pro-choice speakers, dismissal of complaints favoring the disfavored viewpoint, and prolonged prosecutorial pursuit—demonstrates not isolated enforcement decisions but a systematic pattern of viewpoint discrimination.

## VI. Plaintiffs Have Sufficiently Alleged Facts To Support Counts IV and VI that the Ordinance Violates The Free Exercise Clause of the U.S and Ohio Constitutions.

### A. Count IV - First Amendment Free Exercise Claim.

Both the Ordinance and Defendants' discriminatory enforcement thereof violate Plaintiffs' constitutional right to the free exercise of religion. The Knotts hold sincere religious convictions that compel them to engage in sidewalk advocacy to save the lives of the unborn, which they express through amplified speech. The challenged Ordinance facially burdens this religiously motivated conduct by creating a system of individualized exemptions that favors certain speakers while targeting Plaintiffs' religious exercise. Moreover, Defendants' selective enforcement of the Ordinance—citing only Mr. Knotts while permitting pro-choice speakers to engage in identical amplified speech—demonstrates hostility toward Plaintiffs' religious practices in violation of the Free Exercise Clause.

### i. The Ordinance's Facial Unconstitutionality.

"Laws that burden religious exercise are presumptively unconstitutional unless they are both neutral and generally applicable." *Meriwether v. Hartop*, 992 F.3d 492, 512 (6th Cir. 2021) (quoting *Employment Div. v. Smith*, 494 U.S. 872, 877-78 (1990). "A government policy will fail the general applicability requirement if it 'prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way,' or if it provides 'a mechanism for

individualized exemptions.'" *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (citation omitted). "Failing either the neutrality or general applicability test is sufficient to trigger strict scrutiny." *Id.* (citing *Lukumi*, 508 U. S., at 546). "Government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021) (citing *Masterpiece Cakeshop, Ltd.* v. *Colorado Civil Rights Comm'n*, 584 U.S. 617, 631 (2018) (internal citation omitted). The Ordinance here creates a system of individualized exemptions for favored speakers (preferred organizations) while targeting Plaintiffs' religiously motivated sidewalk counseling with a unique burden to their religious exercise. It is thus neither facially neutral nor generally applicable. The Ordinance is therefore subject to strict scrutiny, which it cannot satisfy. No compelling interest justifies allowing amplified speech depending on the message of the speaker, nor is the Ordinance narrowly tailored to the interests the Defendants purport to address.

### ii. Defendants' Religious Discrimination

The facts alleged show that Defendants discriminated against the Knotts for exercising their religious practices, thereby violating the First Amendment. The Constitution forbids "[o]fficial action that targets religious conduct for distinctive treatment." *Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 534 (2012). The government "cannot impose regulations that are hostile to the religious beliefs of affected citizens and cannot act in a manner that passes judgment upon or presupposes the illegitimacy of religious beliefs and practices." *Masterpiece Cakeshop, Ltd v. Colo. Civil Rights Comm'n.*, 584 U.S. 617, 638 (2018).

The Knotts hold a religious conviction to spend their Saturday mornings saving the lives of the unborn through sidewalk advocacy. Compl., at ¶ 5. In accordance with that belief, the Knotts travel to NEOWC to engage in speech opposing abortion and they do so using a battery-operated megaphone so that their message can be heard amid the surrounding traffic noise. *Id.* at ¶¶ 7, 44, 55. On numerous occasions, the police have witnessed abortion clinic escorts using noise amplification

devices and playing music. *Id.* at ¶ 13. The same was true on the morning of December 28, 2024. Both the Knotts and the abortion escorts were using musical instruments or noise amplification but only Mr. Knotts was cited, arrested and prosecuted. This is true even though Defendant officers never personally witnessed Mr. Knotts using the megaphone. Even when Mrs. Knotts tried to inform CFPD officers about the threats they had received from pro-abortion escorts, they were disregarded, and she was told these threats were "not a crime." *Id.* at ¶¶ 37-41, 67. The alleged facts demonstrate that Defendants granted individualized exemptions to pro-choice speakers while singling out only the Knotts' pro-life religious speech for prosecution.

**B.  Count VI – Violation of Art. I, § 7 of the Ohio State Constitution.**

Plaintiffs have also sufficiently alleged a free exercise claim under the Ohio Constitution. In Ohio, the plaintiff must show that his religious beliefs are truly held and that the governmental enactment has a coercive effect against him in the practice of his religion. *Humphrey v. Lane*, 728 N.E.2d 1039, 1045 (Ohio 2000). Once the plaintiff has made a prima facie case, strict scrutiny applies and the burden shifts to the state to prove that the regulation furthers a compelling state interest and is the least restrictive means of furthering that interest. *Id.*

Defendants do not dispute that Plaintiffs' religious beliefs are truly held, *see* Def. MTD, at 16; *see e.g.*, Compl., at ¶¶ 5, 51). Instead, Defendants argue that Plaintiffs fail to allege that the Ordinance interferes with their ability to freely exercise their religion, or that they have ceased their free speech activities. This is not true. Plaintiffs clearly allege that they feel a conviction to spend their Saturday mornings to save the lives of the unborn through their sidewalk advocacy at NEOWC abortion clinic, Compl., at ¶ 5, and that the use of the megaphone is necessary in order to share that message because of the surrounding traffic and other noise employed by clinic workers to drown out their speech. *Id.* at ¶¶ 7-8, 44-47, 55. Plaintiffs also allege that they have refrained from using any form of voice amplification since December 28, 2024, out of fear of prosecution and arrest. *See id.* at ¶ 125.

Plaintiffs have pleaded sufficient facts to allege a free exercise claim under the Ohio Constitution, and the burden now shifts to Defendants to prove that the Ordinance satisfies strict scrutiny. *Humphrey*, 728 N.E.2d at 1045. It does not. As explained above, there is no compelling governmental interest where exemptions given under the Ordinance undermine the very interest asserted by Defendants. *See Cantwell v. Conn.*, 310 U.S. 296, 308 (1940) ("[A] State may not unduly suppress free communication of views, religious or other, under the guise of conserving desirable conditions.").

## VII. Plaintiffs Have Sufficiently Alleged in Count V that the Ordinance Violates the Equal Protection Clause.

"In order to assert an equal protection claim, a plaintiff must allege that a state actor is 'mak[ing] distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference.'" *Harwood*, 2024 U.S. LEXIS 28147, at *6 (quoting *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005)). The purpose of the Equal Protection Clause "'is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Franks v. Rubitschun*, 312 F. App'x 764, 765-66 (6th Cir. 2009) (quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000) (per curiam)).

Defendants incorrectly argue that Plaintiffs must allege and prove intentional discrimination to support their equal protection claim. However, where – as here – the unequal treatment would burden Plaintiffs' fundamental right to free exercise of religion under the First Amendment, "invidious purpose may be inferred." *Koger v. Mohr*, 964 F.3d 532, 545 (6th Cir. 2020). Nonetheless, even if the unequal treatment here did not burden a fundamental right, Plaintiffs have sufficiently alleged intentional discrimination for a class of one claim. *Franks*, 312 F. App'x at 766 (explaining that for a

class of one claim, "a plaintiff must allege that she [or he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment").

Plaintiffs have sufficiently alleged intentional discrimination through circumstantial evidence. *Green Genie, Inc. v. City of Detroit*, 63 F.4th 521, 527-28 (6th Cir. 2023) (noting that the most common approach to demonstrating intentional discrimination is through circumstantial evidence) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-66 (1977)). Plaintiffs and the clinic escorts were identically situated in all material respects: same location, same time, same type of amplified sound (megaphone or instrument, both prohibited by the Ordinance), same potential for noise complaints. The only difference was the content of their message; religious speakers were punished while secular speakers with the opposite viewpoint were not.

Review of the treatment of "similarly situated individuals" is a way to "gauge whether the 'plaintiff failed at the first step to prove intentional discrimination.'" *Green Genie, Inc.*, 63 F.4th at 528 (citation omitted). "To make that assessment, we look to 'relevant similarity.'" *Id.* (citing *Loesel v. City of Frankenmuth*, 629 F.3d 452, 463 (6th Cir. 2012)). Plaintiffs have more than sufficiently alleged that similarly situated individuals (abortion clinic escorts) were treated more favorably by Defendants who looked the other way and chose not to cite them. These abortion clinic escorts who received better treatment than the Knotts were present at the *same location*, at the *same time* and engaged in *same or similar noise* amplification or noise-making activities as the Knotts. The only difference is that the escorts' speech and activities were pro-choice. Compl., at ¶¶ 12-14, 56. Even after Defendants were made aware that the abortion clinic escorts had threatened the Knotts, Defendants only cited, arrested and then prosecuted the Knotts — despite the fact that Defendants never personally witnessed the Knotts engaging in any use of an amplification device, *see id.* at ¶¶ 61 and 65, and video evidence recorded the escorts' similar conduct. *Id.* at ¶¶ 54-56. This is ample evidence to support Plaintiffs' claim of unequal treatment.

Defendants' attempt at justifying the different treatment also fails. *See* Def. MTD, at 22. It is not true that the only complaint made was against Mr. Knotts' use of the megaphone. As already explained above, the Knotts made complaints regarding the abortion clinic escorts' similar conduct with their musical instruments and their threats against the Knotts, and Defendants took no action against them. Compl., at ¶¶ 52, 67.

In light of the exemptions already provided in the Ordinance (which undermine any interest in ensuring that no music, noise, etc., cause annoyance), and the inconsistent application of the Ordinance to the Knotts, no rational basis exists for the unequal treatment.

## CONCLUSION

Plaintiffs have sufficiently pleaded Counts I-VII and Defendants' Partial Motion to Dismiss Plaintiffs' Complaint should be denied.

Respectfully submitted,

**AMERICAN CENTER FOR LAW & JUSTICE**

*/s/ Abigail Southerland*
Abigail Southerland TN026608
625 Bakers Bridge Ave., Suite 105-121
Franklin, TN 37067
Tel: (615) 599-5579
Email: asoutherland@aclj.org


Nathan J. Moelker VA98313
Liam R. Harrell DC1740309
201 Maryland Ave., NE
Washington, DC 20002
Tel.: (202) 855-1778
Fax: (202) 546-9309
Email: asoutherland@aclj.org

**CERTIFICATE OF LOCAL RULE 7.1 COMPLIANCE**

I certify that this Memorandum adheres to the page limitations set forth in Local Rule 7.1(f)

for standard/unassigned cases because it does not exceed 20 pages in length.


*s/ Abigail Southerland*
**Abigail Southerland**

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2025, I filed the foregoing **Response in Opposition to Defendants' Partial Motion to Plaintiffs' Complaint** with the Clerk using the CM/ECF System, which will send notification of such filing to all counsel of record.


*s/ Abigail Southerland*
**Abigail Southerland**