**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ZACHARY KNOTTS, et al., | ) | CASE NO: 5:25-CV-01120 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN ADAMS |
| | ) | |
| v. | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER** |
| CITY OF CUYAHOGA FALLS, et al., | ) | |
| | ) | **(Resolves Doc. 16)** |
| Defendants. | ) | |

Pending before the Court is Defendants City of Cuyahoga Falls, Dylan Paratore, and Bradford Dobney's partial motion to dismiss, seeking dismissal of all of the federal claims in this case pursuant to Fed.R.Civ. P. 12(b)(6). Doc. 16. Plaintiffs Zachary and Lindsay Knotts opposed the motion (doc. 18), and Defendants replied (doc. 20). Upon review, the Court GRANTS the motion and DISMISSES Plaintiffs' federal claims, Counts I through V, WITH prejudice pursuant to Fed.R.12(b)(6).  The Court declines to exercise supplemental jurisdiction over the remaining state claims, and therefore they are dismissed WITHOUT prejudice.  Accordingly, the entire complaint is DISMISSED.

## I.  FACTUAL BACKGROUND

Based upon their religious beliefs, Plaintiffs regularly engage in "sidewalk advocacy" opposing abortion at the Northeast Ohio Women's Center ("NEOWC"). Doc. 1, ¶5. On December 28, 2024, Plaintiffs brought a battery-powered megaphone to "share his message." Doc. 1, ¶7. Also present on December 28 were volunteers ("Escorts") who escort patients from their cars into NEOWC. Doc. 1, ¶8.  The Escorts used umbrellas to shield patient's face and kazoos and whistles to "drown out the Knotts' speech." Doc. 1, ¶8. A nearby resident called the police to complain about the Plaintiffs' use of a megaphone

to amplify their sound.  Doc. 1, ¶59. The resident did not complain about the whistles and kazoos. Doc. 1, ¶60. Defendants Dobney and Paratore ("Individual Defendants") of the Cuyahoga Falls Police Department responded to the complaint. Doc. 1, ¶ 61. Upon arrival, the Individual Defendants spoke with an off-duty Cuyahoga Falls Police Officer who was working as a private security guard. Doc. 1, ¶63. Mr. Knotts was then cited and charged with violating the Cuyahoga Falls Disorderly Conduct Ordinance ("the Ordinance").  Doc. 1, ¶69. Mr. Knotts pled not builty in Stow Municipal Court and on the day of trial, the charges were dropped. Doc. 1, ¶¶71, 72.

In relevant part, the Ordinance states:

(a) No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following:
. . .
(6) Generating or, being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument.

. . .
B. The following are exempted from the prohibitions of this section:
1. Warning and alarm devices which have the purpose of signaling unsafe or dangerous situations or calling for police used for such purposes.
2. Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization or live outdoor musical or theatrical performances or concerts conducted at any outdoor entertainment facility where such use is legal under the Zoning Code.

Codified Ordinances of the City of Cuyahoga Falls, Ohio § 509.03(a)(6).  Plaintiffs concede that they continue to engage in sidewalk advocacy at the NEOWC, only without amplification. Doc. 18, p. 3.

II.      STANDARD OF REVIEW

2

**A.      Failure to State a Claim: Fed.R.Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) permits a court to grant a motion to dismiss when a complaint fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). In deciding a motion to dismiss under Rule 12(b)(6), the court must treat all factual allegations as true and construe the complaint in a light most favorable to the plaintiff. *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009).

**III.     DISCUSSION**

Plaintiffs assert the following federal claims against Defendants pursuant to 42 U.S.C. §1983:

1. The Ordinance is facially unconstitutional under the First Amendment.
2. The Ordinance is void for vagueness under the First Amendment and Due Process Clause.
3. The Ordinance as-applied is viewpoint discrimination in violation of the First Amendment.
4. The Ordinance violates their right to free exercise of religion under the First Amendment.
5. Defendants violated the Fourteenth Amendment right to equal protection.

Plaintiffs assert the following state law claims:

6. Violation of Article 1, Section 7 of the Ohio State Constitution.
7. Violation of Article 1, Sectio 11 of the Ohio State Constitution.
8. Replevin.

**A.      Federal Claims: 42 U.S.C. §1983**

A person is liable under 42 U.S.C. §1983 who "under color of" state law "subjects, or causes to be subjected," another person "to the deprivation of any rights, privileges, or

immunities secured by the Constitution[.]" 42 U.S.C. § 1983. Accordingly, Plaintiffs must allege that 1) they suffered a 'deprivation' of a constitutional right, *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 150 (1970), and 2) Defendants acted 'under color of' state law when inflicting this injury. *See Harcz v. Boucher*, 763 F. App'x 536, 540 (6th Cir. 2019).

In a case where plaintiffs have sued multiple defendants, as in the instant case, the plaintiffs must "also must meet a third §1983 requirement: [They] cannot generically hold one defendant liable for another's actions. Rather, [they] must allege that each defendant, through that defendant's own actions, 'subject[ed]' him (or 'cause[d]' him to be subjected) to the constitutional deprivation." *Rudd v. City of Norton Shores*, 977 F.3d 503, 512 (6th Cir. 2020) (citing *Jane Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020)).  Section 1983 does not allow for vicarious liability. *Doe v. Jackson Local Sch. Dist. Bd. of Educ.*, 954 F.3d 925, 934 (6th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). Thus, Plaintiffs "must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Id.*

### 1.     Individual Defendants

Plaintiffs bring their claims against Defendants Paratore and Dobney in their individual *and* official capacities.  Doc. 1, p. 1.

### a)     Individual Capacity:

Plaintiffs contend that Plaintiff Zachary Knotts was "arrested, cited, and then prosecuted for engaging in constitutionally protected speech because Defendants disagreed with the message of his speech." Doc. 1, ¶3. Plaintiffs generally contend that the Individual Defendants "participated in the arrest and citation of Mr. Knotts." Doc. 1, ¶26, 27. Throughout the rest of the complaint, Plaintiffs reference "Defendants" without

distinguishing who committed what actions. Accordingly, the Court would conclude that Plaintiffs fail to state a claim against the Individual Defendants in their individual capacity.

Further, the crux of Plaintiffs complaint is that the Ordinance unconstitutionally infringes on their First Amendment rights.

> 'The Supreme Court has never denied qualified immunity to a public official who enforced a properly enacted statute that no court had invalidated.' *Freed v. Thomas*, 81 F.4th 655, 660 (6th Cir. 2023) (quoting *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 441 (6th Cir. 2016)) (emphasis removed). 'The enactment of a law forecloses speculation by enforcement officers concerning its constitutionality—with the possible exception of a law so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws.' *Michigan v. DeFillippo*, 443 U.S. 31, 38, 99 S. Ct. 2627, 61 L. Ed. 2d 343 (1979). 'A policeman's lot is not so unhappy that he must choose between being charged with dereliction of duty if he does not arrest when he has probable cause, and being mulcted in damages if he does.' *Pierson v. Ray*, 386 U.S. 547, 555, 87 S. Ct. 1213, 18 L. Ed. 2d 288 (1967).

*Billiards & Brews, LLC v. City of Knoxville*, No. 3:23-CV-181, 2024 U.S. Dist. LEXIS 163606, at *19-21 (E.D. Tenn. Sep. 11, 2024). Plaintiffs do not contend that the Ordinance was improperly enacted, nor do they assert that it has been previously invalidated by a Court. Lastly, as set forth below, the Ordinance is not so "grossly and flagrantly unconstitutional" that any person would see its flaws. Accordingly, Plaintiffs fail to state a claim against the Individual Defendants in their individual capacities. Fed.R.Civ. P. 12(b)(6).

### b) Official Capacity

The Court notes that claims against the Individual Defendants in their official capacity "are equivalent to, and redundant of, claims against the City itself." *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 675 (M.D. Tenn. 2020), (citing *Kentucky v. Graham*, 473 U.S. 159, 166, (1985)).

5

> When government employees like the Defendants are sued in their official capacities, the action 'is equivalent to a suit against the entity on whose behalf [the employees] act[],' here Athens County. *Johnson*, 398 F.3d at 877 (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690 n.55, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978)). In turn, a municipality like Athens County 'cannot be held liable under §1983 on a respondeat superior theory.' *Id*. (quoting *Monell*, 436 U.S. at 691). Rather, municipalities incur §1983 liability only when the plaintiff's injuries are the result of a custom or policy of the municipality. Id.

*Knott v. Sullivan*, 418 F.3d 561, 574-75 (6th Cir. 2005). Therefore, Plaintiffs must allege facts that demonstrate that the Individual Defendants violated their rights as a result of a policy or custom of the City. *Id*.  "'Courts regularly dismiss as redundant claims against agents in their official capacities when the principal entity is also named as a defendant in the suit.'" *Y.S. v. Bd. of Educ*., 766 F. Supp. 2d 839, 842 (N.D. Ohio 2011) (quoting *Carter v. Delaware County Bd. of Comm'rs*, No. 2:07-cv-1189, 2009 U.S. Dist. LEXIS 16436, 2009 WL 544907, at * 15 (S.D. Ohio Mar. 3, 2009).  Accordingly, the Defendants' motion to dismiss is GRANTED as to the INDIVIDUAL DEFENDANTS.  The Court will address Plaintiffs' claims as to the remaining defendant, the City of Cuyahoga Falls ("the City").

### 2.  First Amendment Claims: Free Speech and Free Religions (Counts I, II, III, IV)

Plaintiffs contend that 1) the Ordinance is unconstitutional on its face due to overbreadth (Count I), 2) the Ordinance is unconstitutional on its face and as applied because it is vague (Count II), the Ordinance as-applied is viewpoint discrimination (Count III), and that the Ordinance violates the free exercise of religion (Count IV).

### a)      The Ordinance is Constitutional on its face

"'There is no First Amendment right to amplified sound per se . . . .' *Reform Am. v. City of Detroit, Michigan*, 37 F.4th 1138, 1159 (6th Cir. 2022), cert. denied, 143 S. Ct. 448, 214 L. Ed. 2d 255 (2022). '[T]he First Amendment does not guarantee the right to

6

communicate one's views at all times and places or in any manner that may be desired. . . . [Activities] protected by the First Amendment, are subject to reasonable time, place, and manner restrictions.' *Heffron v. Int'l Soc. for Krishna Consciousness, Inc.*, 452 U.S. 640, 647, 101 S. Ct. 2559, 69 L. Ed. 2d 298 (1981) (citations omitted)." *Fambrough v. City of E. Cleveland*, No. 1:22-cv-00992, 2025 U.S. Dist. LEXIS 49835, at *40 (N.D. Ohio Mar. 19, 2025)

The City, "may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward v. Rock Against Racism*, 491 U.S. 781, 791, 109 S. Ct. 2746, 105 L. Ed. 2d 661 (1989) (quotation omitted).

In Count I, Plaintiffs contend that the Ordinance is facially unconstitutional because it is a content-based restriction on speech that discriminates based on speaker identity. Doc. 1, ¶82. "A facial challenge to a law's constitutionality is an effort 'to invalidate the law in each of its applications, to take the law off the books completely.'" *Speet v. Schuette*, 726 F.3d 867, 871-72 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder*, 557 F.3d 321, 335 (6th Cir. 2009) (en banc). This is an "exceptional remedy." *Speet*, 726 F.3d at 872

A facial challenge is an overbreadth challenge. Id.

"'[A] plaintiff must show substantial overbreadth: that the statute prohibits' 'a substantial amount of protected speech both in an absolute sense and relative to [the statute's] plainly legitimate sweep[.]'" *Id.* (quoting *Wolnitzek*, 614 F.3d at 208). 'Only a statute that is substantially overbroad may be invalidated on its face.' *City of Houston, Tex. v. Hill*, 482 U.S. 451, 458, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987). 'To succeed in an overbreadth challenge, therefore, a plaintiff must demonstrate from the text of [the statute] and from actual fact that a substantial number of instances

7

exist in which the [statute] cannot be applied constitutionally.' *Speet*, 726 F.3d at 873 (quotations omitted).

*Fambrough v. City of E. Cleveland*, No. 1:22-cv-00992, 2023 U.S. Dist. LEXIS 141805, at *40-41 (N.D. Ohio Aug. 14, 2023).

Plaintiffs takes issue with the exceptions in the Ordinance:

2. Shows and exhibitions for which a permit has been obtained pursuant to Chapter 753, parades for which a permit has been obtained pursuant to Section 311.02 of the Traffic Code, and live outdoor musical or theatrical performances or concerts conducted under the auspices of or on property owned by any educational, charitable, governmental or religious organization or live outdoor musical or theatrical performances or concerts conducted at any outdoor entertainment facility where such use is legal under the Zoning Code.

Plaintiffs contend that the exemptions draw a distinction based on the message a speaker conveys, and therefore transforms it from content-neutral to a content-based restriction on speech. Doc. 18, p. 4; Doc. 1, ¶82 Plaintiffs argue that the Ordinance is not content-neutral because "it bans only certain speakers from using sound amplification devices and specifically exempts other speakers such as those putting on shows and exhibitions or parades for which a permit has been obtained, or those conducting live outdoor musical or theatrical performances or concerts conducted by or on the property of any educational, charitable, governmental or religious organization." Doc. 18, p. 4, citing Doc. 1, at ¶¶ 81-84.

To determine if the Ordinance is content neutral, the principal inquiry "is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Id.* An ordinance is neutral if it serves a purpose unrelated to the content of expression "even if it has an incidental effect on some speakers or messages but

8

not others." *Id*. An ordinance regulating expressive activity is content neutral "so long as it is justified without reference to the content of the regulated speech." *Id.*

The Court notes that on its face 1) the Ordinance does not regulate speaker identity, but rather the amplification of the speaker, 2) it does not regulate the content of speech, but rather the amplification of said speech, and 3) the Ordinance exempts certain *locations* holding specific events (concerts, live outdoor musical or theatrical performances) from amplification restrictions, not content.  For example, under this Ordinance, a religious organization hosting a theatrical performance on its property is exempt from the amplification restrictions whether that performance is pro-life or pro-choice.  The Ordinance is content neutral.

Further, the Ordinance is narrowly tailored to serve a significant government interest.

> The Noise Ordinance is narrowly tailored to serve the significant government interest of controlling nuisance noise. The government 'ha[s] a substantial interest in protecting its citizens from unwelcome noise.' *Members of the City Council of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 806, 104 S. Ct. 2118, 80 L. Ed. 2d 772 (1984). The government 'may act to protect even such traditional public forums as city streets and parks from excessive noise.' *Ward*, 491 U.S. at 796. "For a content-neutral time, place, or manner regulation to be narrowly tailored, it must not 'burden substantially more speech than is necessary to further the government's legitimate interests.'" *McCullen v. Coakley*, 573 U.S. 464, 486, 134 S.Ct. 2518, 189 L. Ed. 2d 502 (2014) (quoting *Ward*, 491 U.S. at 799)). '[T]he regulation need not be the least restrictive or least intrusive means of promoting a substantial government interest, nor is there any stringent duty of calibration.' *Lexington H-L Services, Inc. v. Lexington-Fayette Urban County Government*, 879 F.3d 224, 229 (6th Cir. 2018) (internal quotations omitted). 'There must be a sufficient basis —more than mere speculation or conjecture — to demonstrate that the restriction will further the governmental interests.' *Id.* at 228 (internal quotation omitted). 'In all but the most 'exceptional case' ... 'the requirement of narrow tailoring is satisfied so long as the substantial government interest would be achieved less effectively absent the regulation.'" *Id.* at 229 (quoting

9

*McCullen*, 134 S.Ct. at 2535-37 and *Ward*, 491 U.S. at 799 (internal quotation and alteration omitted)).

*Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 754-55 (W.D. Mich. 2019). The Court agrees with this rationale.  "The Noise Ordinance plainly advances the government's legitimate interest in controlling nuisance noise, and it does so without burdening substantially more speech than necessary to achieve this goal." *Id.*

Lastly, the Ordinance leaves open ample opportunities for Plaintiffs to communicate their message.

> Ample alternative channels of communication remain open to Plaintiff after the application of the Noise Ordinance. Indeed, the application of the Noise Ordinance to Plaintiff does not prevent him from continuing to preach the same message on the same sidewalk in front of the clinic without use of an amplification device. As in *Ward*, the Noise Ordinance 'has no effect on the quantity or content of that expression beyond regulating the extent of amplification.' *Id.* at 802. Additional alternative channels available to Plaintiff include, without limitation, internet-based platforms; and more traditional channels, such as posters, newspapers, and leaflets.

*Nylen v. City of Grand Rapids*, 475 F. Supp. 3d 744, 755 (W.D. Mich. 2019). Plaintiffs concede that they "continue to protest, on a public sidewalk." Doc. 18, p. 3. Accordingly, they have ample opportunities to continue to communicate their message.

For all these reasons, the Ordinance is not facially unconstitutional. Count I is DISMISSED.

### b)      The Ordinance is not Vague

In Count II, Plaintiffs contend that the Ordinance is void for vagueness both facially and as applied to them under the First Amendment and Due Process Clause.  Doc. 1, p. 12.

A "statute is unconstitutionally vague if it denies fair notice of the standard of conduct for which the citizen is to be held accountable, or if it is an unrestricted delegation of power which leaves the definition of its terms to law enforcement officers." *Am.-Arab*

*Anti-Discrimination Comm. v. City of Dearborn*, 418 F.3d 600, 608-09 (6th Cir. 2005) (citation omitted). A statute may be void for vagueness if it would deter would-be speakers from speaking because they cannot tell whether their intended speech falls within the statute's prohibitions. *Reno v. ACLU*, 521 U.S. 844, 871-72, 117 S. Ct. 2329, 138 L. Ed. 2d 874 (1997).

To interpret the Ordinance, the Court first looks at whether state courts have spoken on the issue. *Gaughan v. City of Cleveland*, 212 F. App'x 405, 409 (6th Cir. 2007) (*Grayned v. City of Rockford*, 408 U.S. 104, 109-11(1972).). The parties do not argue, and this Court's independent review does not reveal that any Ohio court has spoken on this specific issue.[1] According, the Court will look to the "words of the ordinance itself, the interpretations the state court has given to analogous statutes, and, perhaps to some degree, . . . the interpretation of the statute given by those charged with enforcing it.'" *Id.* at 409-10 (citing *Grayned*, 408 U.S. at 110) (cleaned up). "Significantly, the court is to apply a narrowing construction to a state statute if the state courts in question have applied a narrowing construction to a similar statute." *Id.* at 410 (citing *Grayned*, 408 U.S. at 111-12).

In their complaint, Plaintiffs specifically assert that the Ordinance is vague because it does not define a person of "ordinary sensibilities" or "inconvenience."[2] Doc. 1, ¶98.

---

[1] The Court notes that in *Tatton v. City of Cuyahoga Falls*, 116 F. Supp. 2d 928, 935-36 (N.D. Ohio 2000), the Court reviewed a §1983 claim brought against the City after Plaintiff was arrested pursuant to a different subsection of the Disorderly Conduct Ordinance §509.03. The Court did not address the Constitutionality of the Ordinance.

[2] In their Opposition, Plaintiffs urge this Court to review several phrases that they contend are undefined. Doc. 18, p. 8. "The Ordinance prohibits sounds that cause 'inconvenience, annoyance or alarm' and generate 'unreasonable noise,' but fails to define any of these terms or provide objective criteria for their application. What annoys one person may not annoy another; what one considers unreasonable noise, another may find perfectly acceptable. These entirely subjective judgments, 'without statutory definitions, narrowing context, or settled legal meanings,' render the ordinance unconstitutionally vague." Id. However, Plaintiffs' complaint specifically limits its vagueness argument to the terms "ordinary sensibilities" and "inconvenience." Doc. 1,

When a statute leaves a term undefined, courts "normally construe it in accord with its ordinary or natural meaning." *Smith v. United States*, 508 U.S. 223, 228 (1993).

The Ordinance prohibits disorderly conducts, in relevant part, as follows:

"No person shall recklessly cause inconvenience, annoyance or alarm to another, by doing any of the following: …Generating or, being the owner or person in possession or control of a vehicle or premises by reason of employment, agency, or otherwise, permitting to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument."

The State has interpreted a similar City of Akron ordinance to determine that it was not vague. *City of Akron v. Pouliot*, 2011-Ohio-2504 (Ohio Ct. App. 2011). The ordinance at issue there stated:

No person shall generate or permit to be generated unreasonable noise or loud sound which is likely to cause inconvenience or annoyance to persons of ordinary sensibilities by means of a radio, phonograph, television, tape player, loudspeaker or any other sound amplifying device or by any horn, drum, piano or other musical or percussion instrument.

*Pouliot,* at ¶6. The court recognized that the Ohio Supreme Court had considered a similar statute regulating "unreasonable noise" and found that while "noise ordinances will be 'inherently imperfect,' … an ordinance which proscribes noises reasonably anticipated to offend the reasonable person, rather than the hypersensitive person, 'provides parties with constitutionally sufficient 'fair warning' of what conduct is criminally punishable.'" *Pouliot*, at ¶9, quoting *State v. Dorso*, 4 Ohio St. 3d 60, 64, 446 N.E.2d 449, 453 (Ohio 1983). The court noted that others have applied the reasoning in *Dorso*, and "[i]n short, Ohio courts have concluded that an ordinance that regulates the volume of noise-as

---

¶98. "Plaintiffs cannot, by contrast, amend their complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint." *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020).

distinguished from the content of speech-is not unconstitutionally vague if it incorporates

a reasonable person standard." *Id*. (internal quotations and citations omitted). The court

held that

> ACC 132.16 does not regulate content of speech. Rather, it merely proscribes the generation of 'unreasonable' sounds which will likely disturb 'persons of ordinary sensibilities, i.e., 'the reasonable person.' We conclude, therefore, that the objective standard articulated in ACC 132.16 provides fair warning of the conduct proscribed so that the ordinance is not unconstitutionally vague.

*Pouliot*, at¶ 10.

Similarly, the Ordinance does not regulate the content of speech, but rather

regulates "unreasonable noise" that is "likely to cause inconvenience or annoyance" to

"persons of ordinary sensibilities." As such, the Ordinance "sets forth sufficient standards

to place a person of ordinary intelligence on notice of what conduct the statute prohibits. It

incorporates an objective standard by prohibiting only noise that is "unreasonable" thus

negating Plaintiffs' contentions that the statute does not explain what sounds violate the

Ordinance. *State v. Carrick*, 2012-Ohio-608, ¶20, 131 Ohio St. 3d 340, 343-44, 965 N.E.2d

264, 268 (Ohio 2012). "Further, it enumerates specific factors—'inconvenience,

annoyance, or alarm to another'—with which to judge the level of the disturbance.' *Id.*

Additionally, Plaintiff contends that the Ordinance does not include "clarification

regarding a high standard of mental culpability[.]" Doc. 18, p. 10.  However, the Ordinance

requires a culpable mental state of recklessness ("no person shall recklessly cause").  The

Cuyahoga Falls Codified Ordinances defines this culpable mental states as a follows:

> A person acts recklessly when, with heedless indifference to the consequences, the person perversely disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the

13

person perversely disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

Cuyahoga Falls Codified Ordinance 501.08(c) -Culpable Mental States.

As such, the Court concludes that the Ordinance "provides parties with constitutionally sufficient 'fair warning' of what conduct is criminally punishable" and is therefore not unconstitutionally vague." *Dorso*, at 453.

### c) The Ordinance is not vague as applied.

In Count II, Plaintiffs also contend that "[t]he Ordinance's vagueness encourages arbitrary and discriminatory enforcement[,]" doc. 1, ¶102, asserting that the City discriminatorily enforced[3] it against them and invoking the "heckler's veto" theory. Doc. 1, ¶104; Doc. 18, p. 11-12. As noted above, the Court concludes that the Ordinance is not vague, therefore negating this claim.  However, even assuming vagueness, the Plaintiffs' claims have no merit.

A "heckler's veto" scenario "occurs when police silence a speaker to appease the crowd and stave off a potentially violent altercation." *Bible Believers v. Wayne Cty.*, 805 F.3d 228, 234 (6th Cir. 2015).

The complaint establishes that the December 28, 2024 incident was not the first time Plaintiffs engaged in "street evangelism" at this specific location, with the police present.  Doc. 1, ¶35 (Plaintiffs visited on December 7, 2024), ¶42 ("[o]n December 14, 2024, the Knotts began regularly engaging in the exercise of their pro-life activity outside NEOWC."). They do not allege that the police interfered with their rights on those visits,

---

[3] Discriminatory enforcement will be discussed below.

despite the clear dissent from the escorts. Plaintiffs allege that the escorts regularly used whistles and kazoos to "drown out Plaintiffs' speech[.]." Doc. 1, ¶46.

The difference between the December 28, 2024 incident and the previous visits was that, for the first time, Plaintiffs brought a battery-powered megaphone to "help more people hear their pro-life message." Doc. 1, ¶44. At that time, a "nearby resident heard Mr. Knotts speaking over the megaphone" and "[s]he called the police with a noise complaint requesting that they force Mr. Knotts to stop engaging in his constitutionally protected speech." Doc. 2, ¶¶58-59. The neighbor did not complain about the kazoos or whistles. Doc. 1, ¶60. Officers then responded to this complaint, and cited Mr. Knotts for violating the Ordinance. Doc. 1 ¶¶61, 66, 69.

This is not a "heckler's veto" scenario, because the police were responding to a neighbor's complaint about the amplification, which was in direct violation of an established Ordinance, and not a "hostile crowd to stave off a potentially violent altercation." See, *Bible Believers*, supra; Doc. 2, ¶¶58-59. Further, based on Plaintiffs' allegation that the "megaphone was easily drowned out by the sound of the traffic on the nearby State Road and the escorts' whistles and kazoos[,]" the neighbor's complaint could not have been based on the content of the speech, but rather the amplification. Doc. 1, ¶56. Finally, Plaintiffs concede that they continue to engage in sidewalk advocacy at the NEOWC, only without amplification. Doc. 18, p. 3. Therefore, the *content* of their speech has not been restricted or regulated.

Accordingly, the Ordinance is not vague on its face or as applied. Count II is dismissed.

15

          **d)**     **The Ordinance does not violate the right to free exercise of religion.**

In Count IV, Plaintiffs contend that the Ordinance and the police officers' enforcement of the Ordinance substantially burdened their sincerely held religious beliefs and expressions and violates their First Amendment rights of freedom of religion and free exercise. Doc. 1, ¶¶131, 133, 134.

To establish a free exercise violation, Plaintiffs must show "that a government entity has burdened his sincere religious practice pursuant to a policy that is not neutral or generally applicable." *Robol v. City of Columbus*, 2025-Ohio-973, ¶ 38 (Ohio Ct. App. 2025) (quoting *Kennedy v. Bremerton School Dist.*, 597 U.S. 507, 525 (2022) (internal quotations omitted). A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way." *Fulton v. City of Phila.*, 593 U.S. 522, 534 (2021). Neutral means that an ordinance does not distinguish among religions and does not distinguish between religious and non-religious. *Hartmann v. Stone*, 68 F.3d 973, 978 (6th Cir. 1995).

The Ordinance applies to *everyone,* and does not regulate nor mention any religious activity, creed or affiliation. *Id*. at ¶39.  It does not distinguish among religions or between religion and non-religion.  Accordingly, it is neutral and generally applicable.

Plaintiffs summarily assert that the Ordinance violates their first Amendment right to free exercise as it applies to them. Doc. 1, ¶134. Legal conclusions are not sufficient to state a claim, and therefore dismissal would be appropriate on this basis alone. *Iqbal*, 556 U.S. at 6. In their opposition, Plaintiffs explain that they "hold sincere religious convictions that compel them to engage in sidewalk advocacy to save the lives of the unborn, which they express through amplified speech." Doc. 18, p. 15. However, "'a generally applicable

16

law that incidentally burdens religious practices usually will be upheld.'" *Ky. ex rel. Danville Christian Acad., Inc. v. Beshear*, 981 F.3d 505, 509 (6th Cir. 2020) (quoting *Roberts v. Neace*, 958 F.3d 409, 413 (6th Cir. 2020) (order) (per curiam) (citing *Emp. Div., Dep't of Hum. Res. of Or. v. Smith*, 494 U.S. 872, 878-79(1990)).

The burden must be more than a mere inconvenience; the burden does not infringe "free exercise unless it places a substantial burden on a central religious belief or practice[.]" *Oliver v. Gray*, No. 2:19-cv-619, 2020 U.S. Dist. LEXIS 219537, at *6 (S.D. Ohio Nov. 23, 2020) (citations and quotations omitted); *Hernandez v. C.I.R.,* 490 U.S. 680, 699, 109 S. Ct. 2136, 104 L. Ed. 2d 766 (1989).  There is no such burden here.  Plaintiffs were not denied the right to speak on their religious views or otherwise express their views, they merely were not permitted to engage in *amplified* speech over the complaint of neighbors.

Plaintiffs further assert that the police officers' enforcement of the Ordinance violated their right to free exercise of religion. Doc. 1, ¶¶131, 133.  As noted above, the Individual Defendants have been dismissed, and Plaintiffs' fail to point to pattern, and practice related to enforcement of this ordinance.  Accordingly, Count IV is DISMISSED.

### 3.  Plaintiffs' Monell Claim

In Count III, Plaintiffs assert that pursuant to §1983, Defendants violated their First and Fourteenth Amendment rights. Doc. 1, p. 14. Municipalities may be held liable under §1983 only "when execution of [the municipality's own] policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury that the government as an entity is responsible [for] under §1983." *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978).  Plaintiffs contend that

the City has a pattern and practice of targeted application of the Ordinance by only citing pro-life protestors. Doc. 1, p. 14-15.  Plaintiffs assert that

> the facts alleged in the complaint demonstrate a pattern of viewpoint discrimination and selective enforcement by multiple departments and law enforcement officials. Defendants selectively enforced the Ordinance against pro-life speakers while ignoring identical conduct by pro-choice speakers, creating the precise evil the First Amendment forbids: government favoritism based on the speaker's message.

Doc. 18, p. 12-13.  To establish a showing of an illegal policy or custom for purposes of establishing municipal liability. Plaintiffs must demonstrate:

> (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013).  Plaintiffs attempt to establish liability based on the existence of a custom of tolerance of violating federal rights. However, they fail to allege a pattern of repeated conduct to support municipal liability because they only cite to one incident- the December 28, 2024 citation.

> Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker. Otherwise the existence of the unconstitutional policy, and its origin, must be separately proved. But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the "policy" and the constitutional deprivation.

*Okla. City v. Tuttle*, 471 U.S. 808, 823-24, 105 S. Ct. 2427, 2436 (1985). As noted above, the Ordinance is not unconstitutional, therefore the single incident is not enough to

18

establish a policy or custom for purposes of municipal liability. Id.  Accordingly, Count III is dismissed.

### 4.  Substantive due process: 14th Amendment.

In Count V, Plaintiffs contend that they were treated differently than the escorts, and therefore this "unequal treatment" violates the Equal Protection Clause. Doc. 1, ¶146. Specifically, they contend that they were discriminated on based on their viewpoint and to punish or inhibit the exercise of their First Amendment rights. Doc. 1, ¶142.

Under the doctrine of substantive due process, various portions of the Bill of Rights have been incorporated into the Fourteenth Amendment's limits on the power of the states as being "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 325, 58 S. Ct. 149, 82 L. Ed. 288 (1937) overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969). Due process claims of this nature involve official acts which cause a deprivation of a substantive right specified in the Constitution or a federal statute. *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993). This includes "the specific freedoms protected by the Bill of Rights[.]" *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S. Ct. 2258, 117 S. Ct. 2302, 138 L. Ed. 2d 772 (1997).

The only substantive rights asserted in Count V are within the scope of the First Amendment- the rights to free speech and free exercise of religion. This claim is therefore duplicative of Plaintiffs' First Amendment claims, which the Court disposed of above. *Spencer v. City of Hendersonville*, 487 F. Supp. 3d 661, 682 ("It is clear that, to the extent Spencer has stated a claim for violation of any substantive rights, such rights fall within the scope of the First Amendment, as discussed below. Thus, to the extent Count I might be construed to state a substantive due process claim, any such claim is redundant.").

19

Accordingly, based on the determinations above, Count V must also be dismissed.

**B.    State Law Claims**

Plaintiff's remaining claims sound in state law. Supplemental jurisdiction exists whenever state law and federal law claims derive from the same nucleus of operative facts and when considerations of judicial economy dictate having a single trial. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724 (1966). The Court, however, may exercise discretion in hearing state law matters. *Id*. at 726. In cases where the federal law claims are dismissed before trial, the state law claims should also be dismissed. *Id*. Having dismissed Plaintiff's federal law claims, this Court declines jurisdiction to hear Plaintiff's state law claims. The claims are DISMISSED without prejudice pursuant to 28 U.S.C. §1367(c)(3).

**IV.    CONCLUSION**

Defendants' motion to dismiss pursuant to Fed.R. 12(b)(6) is GRANTED as to Plaintiffs federal claims (Counts I, II, III, IV, V). These claims are hereby DISMISSED with prejudice.   The Court declines to exercise supplemental jurisdiction over the remaining state law claims.   Accordingly, Counts VI, VII¸ VIII are hereby DISMISSED without prejudice.

        IT IS SO ORDERED.

March 31, 2026_____
Date

                                        /s/ *Judge John R. Adams*_____
                                        JUDGE JOHN R. ADAMS
                                        UNITED STATES DISTRICT COURT

20